**Geoffrey P. ENGELS**

v.

**The UNITED STATES.**

**No. 519–77.**

United States Court of Claims.

May 5, 1982.

Paul A. Kiefer, Washington, D. C., for plaintiff; Thomas H. King, Washington, D. C., attorney of record. King & Everhard, Washington, D. C., of counsel.

Richard W. Oehler, Washington, D. C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D. C., for defendant. Major Francis J. Moran, Gen. Litigation Div., U.S.A.F., Washington, D. C., of counsel.

Before COWEN, Senior Judge, and DAVIS and BENNETT, Judges.

## OPINION

DAVIS, Judge:

Plaintiff Geoffrey P. Engels is a graduate of the Air Force Academy who entered active duty in the Air Force as a second lieutenant on June 6, 1962. He served continuously and was promoted to permanent captain on June 6, 1969. He was considered for promotion to permanent major twice, in August 1975 and November 1976. Upon being passed over by both selection boards,[1] he was honorably discharged on June 30, 1977 as required by 10 U.S.C. §§ 8299(h) and 8303(d) (1976).

Plaintiff then brought this suit in October 1977 challenging those passovers and his resulting discharge, seeking reinstatement to active duty, back pay, and deletion of two officer effectiveness reports (OERs) from his record.[2]

A partial trial was held, after which the trial judge concluded that plaintiff should exhaust his administrative remedy before the Air Force Board for Correction of Military Records (Correction Board) with respect to his initial request for mitigating additions to his April 1973 and December 1974 OERs.[3] Without adopting the trial judge's opinion or findings, the court agreed with his recommendation and sus-

---

[1] Engels had previously been passed over by three selection boards for promotion to temporary major, but since he was a regular officer these did not cause his selection out. Between the times he was passed over by the permanent major boards (in 1975 and 1976) he was again passed over twice for promotion to temporary major.

[2] At trial plaintiff withdrew the earlier request for judicially mandated promotion to major, and that issue was not decided by the trial judge, and is not before us.

[3] Plaintiff had instituted, but not completed, a proceeding before the board.

In this opinion, references to an OER of a given date mean the OER covering the period ending on that date. The OER is usually written and signed at a later time.

pended proceedings here to allow consideration of the matter by the Correction Board.

That tribunal corrected Engels's records by attaching the proffered explanatory letters to the two challenged OERs. The Board found, however, that even so there was no basis for promoting him to major, or for setting aside his passovers. A short further trial was held in this court, and the trial judge concluded, on the whole case, that plaintiff is entitled to the relief he ultimately sought. Defendant seeks review. We rule for plaintiff.[4]

## I

### *The standards*

Officers claiming in this court that they have been improperly selected out, after passovers, must first show that the service committed a legal error (or perhaps a serious injustice). *See Horn v. United States,* Ct.Cl., 671 F.2d 1328 (1982); *Evensen v. United States,* 228 Ct.Cl. ——, 654 F.2d 68 (1981); *Grieg v. United States,* 226 Ct.Cl. ——, 640 F.2d 1261 (1981); *Gruendyke v. United States,* 226 Ct.Cl. ——, 639 F.2d 745 (1981); *Hary v. United States,* 223 Ct.Cl. ——, 618 F.2d 704 (1976); *Guy v. United States,* 221 Ct.Cl. ——, 608 F.2d 867 (1979); *Riley v. United States,* 221 Ct.Cl. ——, 608 F.2d 441 (1979); *Doyle v. United States,* 220 Ct.Cl. 285, 599 F.2d 984 (1979), *cert. denied,* 446 U.S. 982, 100 S.Ct. 2961, 64 L.Ed.2d 837 (1980); *Sanders v. United States,* 219 Ct.Cl. 285, 594 F.2d 804 (1979); *Skinner v. United States,* 219 Ct.Cl. 322, 594 F.2d 824 (1979).[5]

For those cases, like this one, in which the challenge rests on defective OERs or an incomplete or inadequate military record, the next question for us is whether the error is causally linked with the passover—in summary terms, was it prejudicial or harmless? *See* the decisions cited *supra,* except *Doyle, Evensen,* and *Horn.*[6] To hold the passover void, the court need not find that the officer would in fact have actually been promoted in the absence of the error, but merely that promotion was not definitely unlikely or excluded.

On the former problem—the existence of the error—the burdens of going forward and of persuasion lie squarely with the claimant. *See, e.g., Hary v. United States, supra,* 223 Ct.Cl. at ——, 618 F.2d at 706–708. On the second step—the causal nexus—we have said broadly, that the plaintiff must show nexus in the sense "that the defect substantially affected the decision to separate him or relieve him from active duty, or at least he must set forth enough material to impel the court to direct a further inquiry into the nexus * * *." *Hary,* 223 Ct.Cl. at ——, 618 F.2d at 706–07. What we meant, more precisely, is that plaintiff, to prevail, must make at least a prima facie showing of a substantial connection between the error and the passover. But the end-burden of persuasion falls to the Government to show harmlessness—that, despite the plaintiff's prima facie case, there was no substantial nexus or connection. The reasons for this division of end-burden are twofold. First, when nexus is considered, plaintiff has already established the existence of the Government's error; second, the defendant, with its far greater knowledge of the facts, statistics, and operations of the promotion selections process, is in much better position to produce evidence and materials showing the lack of adequate nexus in spite of the claimant's prima facie case. Both grounds combine to place on the

---

**4.** We adopt those of the trial judge's findings specified in our order entered contemporaneously with this opinion. In addition, statements of fact contained in this opinion shall be considered part of the court's findings.

**5.** Thus far, the court has taken account in passover cases of only those injustices (falling short of error) which have been expressly recognized as such by a Correction Board, but the court has also reserved the possibility of recognizing very serious injustices not accepted as such by

the boards (so long as the claimant sought monetary relief within our jurisdiction). *See Grieg v. United States, supra,* 226 Ct.Cl. ——, 640 F.2d at 1266–67.

**6.** Where the error goes, not to the OERs or the record, but to the composition of the selection board (as in *Doyle, Evensen,* and *Horn*), the court has held the causal nexus (or, conversely, the "harmless error") principle to be inapplicable.

defendant the ultimate risk that the court remains unconvinced that the proven error can be deemed harmless, insubstantial in effect, or unimportant. As the court said in *Sanders*, "the ultimate burden should be on the party whose error and obfuscation of the evidence caused the problem in the first place." 219 Ct.Cl. at 306, 594 F.2d at 816. *See* Part III, *infra*.

## II

### *Legal error*

On the existence in this case of two separate legal errors, there can now be no dispute. The Correction Board found that "[s]ufficient relevant evidence has been presented to demonstrate the existence of probable error or injustice." This conclusion was based, first, on the finding that one of Engels's commanding officers, Colonel Watson, had coerced two others, Majors Ward and Melander, to downgrade the numerical rating on Engels's December 1974 OER. Under the threat of a deliberately prolonged stay in Korea, they gave Engels an 8/3 rating rather than the 9/4 they had originally intended. Major Ward also admitted adding negative written comments to the narrative portion of the evaluation, as a result of the "pressures/threats."[7] This incident plainly establishes legal error because the raters' own evaluations were deliberately lowered by improper command influence, contrary to the regulations and the purpose of the OER system. *Skinner v. United States, supra,* 219 Ct.Cl. at 327–329, 594 F.2d at 827–828, conclusively shows this principle.[8] Second, plaintiff established (and the Board also found) that a rather glowing letter of evaluation written by a Lt. Colonel Thornton, which was required to be included in Engels's papers (in connection with the April 1973 OER), was never put in his selection folder. This too is legal error because the letter of evaluation was mandated by the length of plaintiff's service under Lt. Colonel Thornton.

In addition, plaintiff asserts that information concerning the number of his combat missions, medals, and commendations was for a time also missing from the folder. Although his more than 517 combat area missions were not reflected on his computer printout, the narrative comments in the March 1972 OER refer to "more than 500" missions; that data seems to have been adequately apparent to the selection board members so as to prevent any substantial unfairness or error. As to his many commendations, the record is not completely clear. At the time of the August 1972 selection board, the information was probably missing from his resume, because it was missing from his September 1974 printout. But it also appears likely that the medals and awards were catalogued on his 1972 AF Form 11, because a later (April 1974) AF Form 11 included such a tally. In short, we cannot say that plaintiff has carried his burden on this part of his showing of error.

## III

### *Impact or Nexus*

The harder question in this case is the relationship of the two legal errors (set forth in Part II, *supra*) to plaintiff's passovers—the issue of nexus, connection, prejudice (as opposed to harmlessness). To solve that problem (in the face of legal errors) we have applied two separate but interrelated standards: First, was the claimant's record prejudiced by the errors in the sense that the record appears worse than it would in the absence of the errors? Second, even if there was some such prejudice, is it unlikely that he would have been promoted in any event? *See e.g., Hary, supra,* 223 Ct.Cl. at ——, 618 F.2d at 710. On the first aspect, there is ordinarily little need to alter the normal principle that the

---

**7.** This additional remark was to the effect that Engels was "spending an excessive amount of time on [his] additional duties, to the detriment of [his] primary duty."

**8.** That a rating higher than 8/3 would not have been confirmed by Lt. Colonel Watson, who could have expressed his own disagreement, does not excuse or mitigate the failure of Majors Ward and Melander to specify their originally intended 9/4. *See Skinner, supra.*

claimant would have the burden of going forward and probably also of persuasion since he usually has full access to what his true record is. On the second question, as we have said in Part I, *supra*, the plaintiff must make a prima facie case but the end-burden of ultimate persuasion lies with defendant to show the improbability of his selection even if his record were untainted.

Where the Correction Board applies these standards and principles, its determination of the issue of nexus will stand if it is supported by substantial evidence and non-arbitrary. *See Guy*, 221 Ct.Cl. at ——, 608 F.2d at 871–72; *Sanders*, 219 Ct.Cl. at 298, 594 F.2d at 811. In this case, however, we cannot take the course of merely reviewing the Board because we are too uncertain that it applied the proper rules. At the crucial point in its report, the Board noted that it had two options, the first being a favorable recommendation for promotion and the second being a recommendation to set aside the nonselections. Immediately thereafter the report says: "In order to accomplish *either of those decisions*, we must *first* conclude that the letter of mitigation would *clearly* have changed the selection board's decision. The second issue concerning setting aside his nonselections should be made only if there is a real question as to whether or not the corrective action taken [*i.e.* recognition by the Board of the errors] would cast a reasonable doubt on the outcome of the selection board(s) in question" (emphasis added). The first sentence—explicitly referring to both the question of promotion and that of voiding the passovers—plainly applies the incorrect "but for" standard to the voiding of the passover. *See Hary*, 223 Ct.Cl. at ——, 618 F.2d at 709. The second sentence *supra*, referring only to voiding of the passover, does state in effect the correct standard, but in view of the plain error in the preceding sentence we cannot say that in fact the Board applied the proper measure.[9] Accordingly, we must, as in *Hary*, appraise the record for ourselves to determine the presence or absence of the requisite connection or nexus.[10]

We are quite satisfied that, as a result of the improperly coerced December 1974 OER and the absence of the Thornton letter respecting the period of the April 1973 OER, plaintiff's record before the permanent major selection boards (in 1975 and 1976) was not portrayed in a "fair and equitable" manner (as the statute demands) but was significantly worse than it should have been.[11] Command coercion changed Engels's December 1974 evaluation by his immediate raters one full grade from 9/4 to 8/3, and added a damaging narrative comment (not believed by the rater) to plaintiff's permanent record. Moreover, the omission of the Thornton letter kept from the selection boards an enthusiastic appraisal of plaintiff for an important, though relatively short, period ending in April 1973.

By the same token, plaintiff has made a *prima facie* case that this worsening of his record contributed substantially to his nonselections. His record was otherwise very good, in many respects outstanding, and he had shown special capabilities. He had flown an enormous number of missions in combat areas; he had recommendations for

---

**9.** In another part of its report, the Board seems also to have applied the erroneous "but for" test: "We do not find it *conclusive* that [plaintiff] would have been promoted by the selection boards that would have seen the mitigated OER" (emphasis added).

**10.** There has been a trial in this court and the record seems complete on this point. As indicated in note 4, *supra*, we do not accept all the trial judge's findings, though we agree with most of them and with his result. In making our appraisal we have accepted all the hard and specific facts stated in Colonel Shumway's affidavit proffered to us by defendant, and have taken account of his conclusions (though we do not accept them, in part because he seems at several points to have based his evaluation on too demanding a showing of prejudice).

**11.** "If a Service Secretary place before the Board an alleged officer's record filled with prejudicial information and omits documents equally pertinent which might have mitigated the adverse impact of the prejudicial information, then the record is not complete, and it is before the Selection Board in a way other than as the statute prescribes." *Weiss v. United States*, 187 Ct.Cl. 1, 7, 408 F.2d 416, 419 (1969).

promotion to major, some of them very enthusiastic; and he had twice earned the Distinguished Flying Cross and he had many other commendations and medals. In no way could he be considered merely an average, mediocre, or run-of-the-mill officer. Against this background, it is not at all unlikely that the most recent rating available to the officer's first permanent major selection board (August 1975) had special significance; a 9/4 at that time (instead of an 8/3) might have been essential or at least the trigger to promotion to permanent major, especially since his immediately earlier rating had been 9/4. The coerced negative addition to the narrative report, which indicated that Engels let his additional duties interfere with his primary aircrew duties, undoubtedly lessened his chances still further.

We are not persuaded by defendant's arguments that, in any event, plaintiff was unlikely to be promoted. It is said, for one thing, that the average of all of plaintiff's OER ratings was about 7.4/3 and therefore that the coerced 8/3 rating helps, rather than hurts, his average. This contention obviously assumes that the position of the OER in the sequence of ratings is unimportant, which it is plainly not. The addition of an 8/3 to his early record might be beneficial, but an 8/3 after he started receiving 9/4 ratings is detrimental. Moreover, the coerced narrative comment in the Dec. 1974 OER is the worst we have seen in plaintiff's record.

The Government also makes much of the "regressions" in plaintiff's OERs, and insists that these make him an unlikely candidate for promotion. The pattern, to us, does not seem so compelling. Not counting the challenged OERs, plaintiff's record admits, at most, of four regressions prior to the August 1975 permanent major selection board. None of these represents a drop of more than one grade on the nine grade scale, and the biggest drop (from the March 1972 to the September 1972 OER) expresses a change in performance from "outstanding" and "promote well ahead of contemporaries" to "exceptionally fine" and "consider for advancement ahead of contemporaries". We cannot say that such "regressions" necessarily or probably prevent promotion, especially if, as here, the more recent trend has been upward. In fact, we held a very similar record in *Riley, supra*, to present a picture of steady advancement. 221 Ct.Cl. at ——, 608 F.2d at 442–43. Engels's upward progress was interrupted, but steady. Assuming the original 9/4 (in the coerced OER) had remained in the record, plaintiff's folder would have shown consistently improving performance, peaking and holding at the highest level.[12]

Defendant stresses, too, that the "front side" (specific category) ratings for Engels's judgment and leadership were occasionally next to highest rather than highest. But without comparative data on how other officers were rated on the same criteria, and whether those officers were promoted, the data given on those ratings is of little use to us.[13]

In this connection, we note specially the significance of the failure to include in plaintiff's record the letter of evaluation by Lt. Col. Thornton.[14] That letter is very complimentary, and strongly recommends Engels for promotion. The letter should have been in plaintiff's folder at the time of

12. Col. Shumway's affidavit also suggests that plaintiff's earlier OERs were below average, in some instances in the bottom 20% of all captains rated during the same period. However, we have not been convinced that, for the purposes of the August 1975 and November 1976 permanent boards (with which we are now concerned), these earlier OERs would have had so much significance as Col. Shumway attributes to them.

13. Defendant has produced no comparative data of the type presented in *Hary* and some other cases. That type of data, which allows the court to tell how many officers were ahead of the plaintiff for promotion with and without the corrections made to his record, is helpful in determining comparative position, and, therefore, the critical issue of whether the error was harmless.

14. The letter itself is missing but has been summarized by Lt. Col. Thornton for this record.

his October 1974 selection board along with the then current OER which rated him at 8/3. The letter might have enhanced that score enough to garner a promotion; at the least, claimant's record would have become better. Defendant argues that the failure to include the Thornton letter was harmless because the same information was replicated in plaintiff's April 1973 OER. The same hard facts are presented in both documents, but the tone is different. The information in the OER forms is cold and, for the most part, nonevaluative. The same facts acquire a much more significant shine in the words of Lt. Colonel Thornton. Those words, if they are the same as those in the statement summarizing that lost document, seem to be the narrative equivalent of a 9/4 rating. As in *Guy*, 221 Ct.Cl. ——, 608 F.2d at 872, the letter covered a period of active combat duty in Southeast Asia and might have been considered especially important by the selectors.[15]

Another of defendant's points is that plaintiff was twice passed over by selection boards for temporary major before the occurrence of the legal errors now involved. Noting that these first two nonselections (Aug. 1972; Sept. 1973) were untainted, the Government urges that subsequent passovers (by one temporary board, the two permanent boards, and two more temporary boards) occurred because plaintiff could not compete with that same group of officers that had been selected over him by those first two boards. Defendant cites, in support of that argument, statistics which show that on each subsequent selection the percentage of officers promoted from the same original group goes down. These statistics are true but not at all decisive. The simple and more informative fact is that, in most instances, some officers are selected for promotion who were not selected on earlier occasions. The officers may have improved their records, as did Engels, in the intervening period. In any event, prior nonselection is not fatal. It is plain that

the selection boards are willing to promote some officers whose records did not warrant promotion at the earlier time. The point is that in the absence of other information the bare fact that fewer of each subsequent group are promoted does not add much toward a showing that an officer was unlikely to be promoted later, especially where, as in this case, only the first two of the several passovers were untainted by serious legal error and the tainted record before the later boards (particularly the permanent boards) was significantly and substantively worsened by those errors.

Finally, we consider it important that the errors were additive. At the time of the October 1974 (third) temporary selection board only one error, the omission of the Thornton letter of evaluation, had occurred. But by the time of the August 1975 (first) permanent selection board, the coerced OER had been added to Engels's file. Considered together, we cannot say that despite those errors, it was unlikely that plaintiff had any chance of promotion by the two permanent boards. The errors here look much like those in *Skinner*. There, the two challenged 8/3 ratings were the lowest the plaintiff had received in recent times. Similarly here, at the time of his first permanent selection board, the two problematic 8/3 ratings were the lowest in three years. If those two had been read as the equivalent of 9/4s, Engels's record would have shown four consecutive top ratings. We are not persuaded that, presented with a record so different from the one they actually saw, the permanent selection boards would clearly have made the same decisions.

Plaintiff asks that the April 1973 and December 1974 OERs be excised from his record, and that four subsequent passovers be expunged. As noted *supra*, at note 15, we do not find the absence of the Thornton letter to have so prejudicially affected the April 1973 OER, that we should delete that entire report. Because we find the coerced

---

**15.** Plaintiff now suggests that the entire OER for April 1973 be excised because of the failure to include Lt. Col. Thornton's evaluation. This omission was a legal error because the regula- tions required it to have been included, but we are not persuaded that removal of the whole OER is required (as opposed to inclusion of the letter in his record for mitigation purposes).

December 1974 OER to be very significantly defective, we agree that it must be removed from Engels's folder.[16] That defective OER, especially when combined with the earlier omission, taints all subsequent selection proceedings. Therefore, his record must be expunged of the passovers by the August 1975 and November 1976 permanent major selection boards, as well as the passovers by the September 1975 and October 1976 temporary major selection boards. Engels should be reinstated to active duty as of July 1, 1977, and, subject to deduction of discharge adjustment pay and other earnings, is awarded back pay from that date. Judgment is entered for plaintiff with the amount to be determined pursuant to Rule 131(c). In addition, the Secretary of the Air Force is directed to take the following action to correct plaintiff's records:

A. Expunge from his records his nonselections, for promotion to the rank of major, by the August 1975 and November 1976 permanent major boards, and by the September 1975 and October 1976 temporary major boards.

B. Expunge the records of his separation as a captain on June 30, 1977.

C. Correct his records to show that he was retroactively reinstated to active duty as of July 1, 1977, as a captain.

D. Include in his records a statement that this record has been corrected as a result of judicial action.

---

16. A fair explanation for its absence should be included in its place.

Although plaintiff sought from the Correction Board only the addition to the record of Major Ward's letters, in mitigation of the coerced OER, we agree with the trial judge that that OER was invalid and should be wholly excised. Plaintiff is excused from having failed to amend his application to the Correction Board to request such removal; there was a very short time between this court's order (dated Oct. 19, 1979) suspending proceedings here to allow reconsideration by the Board and the date of the Board's determination (November 2, 1979), and we are not satisfied that plaintiff had an adequate opportunity to amend or alter his application (there was no oral hearing) and we consider that failure inadvertent and excusable. Both in his original petition in this court (filed October 19, 1977) and in his amended petition of December 19, 1976, filed shortly after the Correction Board's determination, plaintiff sought removal of the December 1974 OER.