**Gary C. HOFFMAN, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 767–85–C.

United States Claims Court.

March 6, 1989.

Richard D. Marks, Washington, D.C., for plaintiff.

John S. Groat, with whom was Asst. Atty. Gen. Richard K. Willard, Washington, D.C., for defendant; Major James M. Kinsella, Dept. of the Air Force, of counsel.

## OPINION AND ORDER

TURNER, Judge.

Plaintiff appeals from a decision of the Air Force Board for Correction of Military Records (AFBCMR) denying his request for restoration to active duty, for set aside of his non-selections for promotion, for removal of certain Officer Effectiveness Reports (OER's) and non-selections from his records and for promotion to the permanent regular grade of major. The matter stands on the parties' cross-motions for

summary judgment. Based on the pleadings, briefs and record submitted, for reasons discussed below, defendant's motion is granted, plaintiff's cross-motion is denied and the case is dismissed.

## I

Plaintiff was appointed a second lieutenant on June 8, 1966. He served the first ten years of his Air Force career as a procurement officer, progressively advancing to the rank of captain. Plaintiff's service record as Chief of the Procurement Division at Kincheloe Air Force Base, Michigan, evinced commendable performance. He received three OER's at the highest ratings and was also awarded the meritorious service medal for outstanding non-combat service for his work as Chief of the Procurement Division at Kincheloe.

In April 1976, plaintiff was assigned to duty as Chief of the Procurement Division of the 100th Air Refueling Wing at Beale Air Force Base, California. In the two years preceding plaintiff's appointment, the Procurement Division had a troubled history. It was beset by management difficulties and had been rated "unsatisfactory" by Strategic Air Command (SAC). The Division had received marginal and unsatisfactory ratings in 1975 and 1976 citing ineffective management and weak supervision resulting in the removal of plaintiff's predecessor. In addition, Beale underwent a major reorganization of the aircraft and personnel serviced by the base in early 1976. During the same period, the Procurement Division suffered a loss of experienced military personnel without replacement. In sum, plaintiff inherited a situation at Beale which had deteriorated to the point that immediate corrective action was required.

As Chief of the Procurement Division, plaintiff staffed, reorganized, trained personnel and involved base managers in the function of the division. Plaintiff organized a Contract Administration Branch which constituted a new fourth branch in the Procurement Division.

The new Contract Administration Branch was established to correct weak administration of post-award contracts, a longstanding problem of the Procurement Division. Plaintiff received support and written approval to establish a fourth branch from both his superior, Col. Bodenhamer, and SAC headquarters. However, soon after plaintiff began to implement his reorganization, the officer he selected to be the Contract Administration Branch Chief was detailed away for more than three months of schooling. In addition, plaintiff was directed to send the Chief of the Systems Management Branch to a five week seminar. Although plaintiff protested the absence of valuable personnel from important staff positions at a crucial time, his requests were denied.

In September 1976, a SAC assistance team conducted an evaluation of the Procurement Division at Beale. The team leader cited "internal dissatisfaction and a loss of operating efficiency" but concluded that the Procurement Division at Beale was "essentially in compliance with current procurement directives."

In October 1976, the Procurement Division failed an Operational Readiness Inspection conducted by the SAC Inspector General's office. The Inspector General rated the division unsatisfactory for numerous deficiencies in procurement matters resulting from ineffective management and low morale within the division. As a result of the SAC inspection failure, plaintiff was relieved of duty as Chief of the Procurement Division.[1]

## II

By letter of December 28, 1976 to General Russell E. Dougherty, Commander In Chief of the Strategic Air Command (CINC-

---

1. The record does not document the exact date plaintiff was relieved of his duties. Plaintiff maintains that he was replaced by the Deputy Commander for Resource Management who was assigned to supervise the procurement division the day the Inspector General Team left, October 19, 1976. On December 23, 1976, plaintiff was removed from the procurement career field and assigned other duties at Beale until his involuntary separation from the Air Force on April 30, 1981.

SAC), plaintiff requested an investigation into the circumstances surrounding his removal, suggesting command mismanagement and questioning the appropriateness of the decision to remove him. On January 13, 1977, CINCSAC ordered that an inquiry be conducted in accordance with Air Force Regulation 120–3 and authorized the appointment of "[a] senior officer, external to the 100 Air Refueling Wing, to inquire into the circumstances that led to [plaintiff's] removal." Records of Proceedings of the AFBCMR, p. 169. Subsequently, an inquiry was performed by Colonel John A. Brashear, U.S.A.F. Vice Commander, 320 Bombardment Wing, Mather Air Force Base, California. Following a review of the Report of Inquiry, the CINCSAC advised plaintiff that he concurred with plaintiff's removal from his position as Division Chief.

Plaintiff remained at Beale where he was assigned other duties. Subsequent OER's were unfavorable.

Plaintiff was considered and passed over for promotion to the temporary major selection boards convened on October 18, 1976, June 5, 1978, June 4, 1979 and April 7, 1980, and the permanent selection boards convened on July 9, 1979 and September 2, 1980, none of which recommended that he be selected for promotion. Having been "passed over" twice for promotion to permanent major, plaintiff was relieved of his commission on April 30, 1981 and discharged from active duty. *See* 10 U.S.C. § 632(a) (1982).

### III

On March 19, 1981, plaintiff applied to the AFBCMR seeking (1) removal of the OER's rendered after the SAC Inspector General's report, (2) set aside of non-selections for promotion, (3) restoration to active duty commissioned status, and (4) promotion to permanent Regular Air Force grade of major.

During the processing of plaintiff's application, the AFBCMR requested and received advisory opinions from Air Force personnel agencies and the Air Force Judge Advocate General. An advisory opinion from Headquarters, Air Force Manpower and Personnel Center to the AFBCMR assessed plaintiff's performance record as it would have appeared to the relevant promotion boards if the requested changes were made. The advisory opinion concluded that plaintiff would have been in no better position than he currently finds himself. Due to the overall ratings plaintiff received, coupled with the absence of good, consistent promotion recommendations and the frequent "below top block" ratings received in some key performance/rating areas, the advisory opinion concluded that "the [plaintiff's] record was not of the quality necessary for selection ahead of others who had more competitive records and were not selected." Records of Proceedings of the AFBCMR, pp. 144–145. Plaintiff was given the opportunity to, and did, respond to the opinions received by the AFBCMR.

Plaintiff's application was denied by the AFBCMR on the ground that the evidence presented failed to demonstrate the existence of probable material error or injustice. On December 31, 1985, plaintiff appealed the AFBCMR decision by filing his complaint with this court.

Plaintiff seeks relief on the ground that the Board's decision was not in accordance with statute or precedent. He contends that, as a matter of law, the Air Force denied to him a proper inquiry into the conduct of his superior officers in their management of the Procurement Division at Beale Air Force Base in violation of Air Force regulation. Further, plaintiff argues that the results of this improperly conducted inquiry tainted all of plaintiff's subsequent OER's and all selection board proceedings which considered those OER's.

### IV

■ This court has jurisdiction to review a decision of a board of correction for military records having pay consequences. *Hertzog v. United States,* 167 Ct.Cl. 377, 383–84 (1964). However, this court is mindful that Congress has entrusted the primary duty of correcting military records to the correction boards. *Sanders v. Unit-*

*ed States,* 219 Ct.Cl. 285, 299, 594 F.2d 804, 814 (1979). Therefore, "judicial deference must be at its apogee in matters pertaining to the military and national defense." *Voge v. United States,* 844 F.2d 776, 779 (Fed.Cir.1988) (quoting *Rostker v. Goldberg,* 453 U.S. 57, 70, 101 S.Ct. 2646, 2654, 69 L.Ed.2d 478 (1981)). Where reasonable minds might reach differing conclusions, the court will not sit as a "super correction board" and substitute its judgment for that of the correction boards. *See Skinner v. United States,* 219 Ct.Cl. 322, 330–31, 594 F.2d 824, 829–30 (1979).

■ In an appeal of an AFBCMR decision, this court's review is limited to determining whether there has been substantial compliance with statutes and regulations, whether the agency acted arbitrarily or capriciously, and whether there is substantial evidence [2] to support the agency's decision. *Morrow v. United States,* 227 Ct.Cl. 290, 296, 647 F.2d 1099, 1102, *cert. denied,* 454 U.S. 940, 102 S.Ct. 475, 70 L.Ed.2d 247 (1981); *Romero v. Department of Army,* 708 F.2d 1561, 1563 (10th Cir.1983).

To prevail, plaintiff must "overcome the strong but rebuttable presumption that administrators of the military, like other public officials, discharge their duties correctly, lawfully, and in good faith." *Sanders,* 219 Ct.Cl. at 302, 594 F.2d at 813. To rebut this presumption, plaintiff must do more than "merely allege or prove that an OER seems inaccurate, incomplete or subjective in some sense." *Hary v. United States,* 223 Ct.Cl. 10, 17, 618 F.2d 704, 708 (1980). The plaintiff must establish "through cogent and clearly convincing evidence" that the Board's decision was arbitrary and capricious, unsupported by substantial evidence, or contrary to law for this court to overturn the AFBCMR's decision. *Cooper v. United States,* 203 Ct.Cl. 300, 304–05 (1973).

The gravamen of plaintiff's complaint is that he was unfairly blamed for deficiencies in the Procurement Division of the 100th Air Refueling Wing at Beale Air Force Base and that the Air Force failed to conduct a proper investigation of plaintiff's December 1976 charges of command mismanagement. Plaintiff contends that as a result the selection boards which subsequently considered him for promotion did so on the basis of a record containing OER's that were written and endorsed by the very officers whom plaintiff had accused of malfeasance and whose conduct he had sought to have investigated in 1976. The presence of these illegally written OER's and the absence in his record of the results of a properly conducted inquiry, plaintiff asserts, constitute material factual errors and prejudicial injustices which rise to the level of legal error. *See Sanders,* 219 Ct.Cl. at 304, 594 F.2d at 816.

Defendant contends that the denial of relief by the AFBCMR was correct in view of the record demonstrating a lack of sufficient evidence that either the 1977 inquiry or the OER's, which led to the plaintiff's separation from active commissioned service, were improper.

## V

■ This court must ascertain whether the AFBCMR acted arbitrarily and capriciously in failing to void plaintiff's OER's conducted after the contested 1977 inquiry. The question is whether the inquiry conducted was improper and, if so, whether it tainted the plaintiff's subsequent OER's so as to invalidate his separation from active commissioned service.

The court's review begins with a consideration of the propriety of the 1977 inquiry. Air Force Regulation (AFR) 120–3 governs administrative inquiries and investigations.[3] Paragraph 2 of AFR 120–3 requires that inquiries and investigations "be

---

2. Substantial evidence is "[s]uch relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

3. The AFBCMR found that AFR 120–3 was the applicable regulation in light of plaintiff's failure to file an Article 138 complaint. Because an Article 138 complaint is the proper mechanism to request a formal investigation, this court concludes that the matter was appropriately handled by an informal inquiry.

investigated by an echelon of command compatible with a complete, impartial, and unbiased presentation of facts...." Paragraph 3a explains that an inquiry is "generally adequate if the subject of inquiry is not complex or of serious consequence and the matter can be resolved through normal staff actions and procedures." Finally, under paragraph 4b(4) commanders are required to "[r]efer to higher command for investigation of all matters and incidents that do not lend themselves to an impartial and unbiased investigation within the command or organization of origin."

Plaintiff contends that ¶¶ 2 & 4(b) of AFR 120–3 were violated with the appointment of Col. John A. Brashear, U.S.A.F., Vice–Commander of the 320th Bombardment Wing, Mather Air Force Base as the Inquiry Officer.

The appointing authority, the Division Commander at Beale, Brig. Gen. Albert L. Melton, endorsed the performance reports both of Capt. Hoffman's commanders, Cols. Autery and Bodenhamer, and the inquiring officer, Col. Brashear. Col. Tobin, the Commander of the 100th Air Refueling Wing, who had the overall command responsibility for the functioning of Beale's Procurement Division, received his rating from Gen. Melton.

Plaintiff claims that Col. Brashear was closely related to, and subject to strong influence by, the officers in the chain of command above plaintiff at the 100th Air Refueling Wing of Beale Air Force Base. Plaintiff takes the position that all of these officers had a significant interest in avoiding blame for the deficiencies of the procurement division which tainted the objectivity of the inquiry.

This court must presume that military officers, like other public officials, "discharge their duties correctly, lawfully, and in good faith." *Guy v. United States*, 221 Ct.Cl. 427, 433, 608 F.2d 867 (1979). "It takes well-nigh irrefragable proof to overcome the presumption." *Sanders v. United States Postal Service*, 801 F.2d 1328, 1331 (Fed.Cir.1986). *See also Knotts v. United States*, 128 Ct.Cl. 489, 492, 121 F.Supp. 630, 631 (1954).

Plaintiff's allegations are supported only by his contention that mere proximity in the chain of command establishes proof of bias. Mere contentions of imputed bias do not constitute proof.

Plaintiff's speculation suffers in comparison to the factual contentions of unlawful command influence recognized by the Court of Claims in *Engels v. United States*, 230 Ct.Cl. 465, 678 F.2d 173 (1982). In *Engels*, a superior officer coerced two subordinate officers to downgrade the numerical rating on Engel's OER. One of the subordinates also added negative written comments as a result of his superior's pressure and threats. Though the appointment of an officer from within the command chain presents an appearance of potential command influence, the record fails to establish by clear and convincing evidence the existence of legal error in the appointment of Col. Brashear as the Inquiry Officer.

Plaintiff points to several factors to illustrate the existence of fundamental legal imperfections in the inquiry report. He alleges that Col. Brashear's bias was manifest in his refusal either to call witnesses which plaintiff requested or to allow the plaintiff to cross-examine witnesses during the inquiry.

The AFBCMR found that there was no denial of due process since the regulation, AFR 120–3, specifically authorizes the methods of which the plaintiff complains. Col. Brashear alone could decide upon the witnesses to be interviewed because AFR 120–3 gives the inquiry officer complete discretion in the gathering of facts. Further, it is specifically stated in AFR 120–3 that "personnel under investigation *may* be extended the *privilege*" of being present during the examination of witnesses, of producing witnesses and of cross-examining witnesses. AFR 120–3(7)(b) (emphasis added).

Finally, plaintiff alleges that Col. Brashear's report drew an inaccurate conclusion concerning plaintiff's formation of a fourth branch within the Procurement Division; a Contracts Administration Branch. Specifically, plaintiff contends that the 1977 in-

quiry report's conclusion that plaintiff had not properly coordinated the forming of the fourth branch with command was incorrect and resulted in a lower Operational Readiness Inspection rating. Similarly, plaintiff argues, the report neglected to deal with crucial evidence of the culpability of plaintiff's superior officers in managing and assigning the Procurement Division's personnel.

Even if this court did not agree with Col. Brashear's decisions to overlook these discrepancies concerning the initiation of a fourth branch within the Procurement Division or the assignment of valuable personnel, the inquiry report was the product of the inquiring officer's independent judgment. The inquiry report confirms that the Air Force exercised proper discretionary judgment in removing plaintiff from the post. Col. Brashear's conclusions were supported by statements from other individuals who worked with plaintiff which indicated that plaintiff was experiencing difficulty in the management of the division.[4]

The report substantiates that problems existed with the management and administration of personnel in the Procurement Division at Beale Air Force Base. It states in part:

(1) The ... Division ... has been plagued with serious internal problems for an extended period of time. This is substantiated by a marginal rating on an ORI conducted in February 1975, an unsatisfactory staff assistance visit by SAC/LGPP in January 1976, extensive write-ups on a subsequent staff assistance team visit in September 1976, and an unsatisfactory rating on the ORI conducted in October 1976.

(2) Ineffective management and weak supervision were cited as the primary cause for the unsatisfactory condition which existed in January 1976.

(3) The personnel situation which existed when (applicant) assumed duties ...

was virtually the same as, if not slightly worse than, that which existed during the January staff assistance visit.

(4) ... [T]here is little documented evidence to indicate that (applicant) had a systematic program to correct discrepancies identified by the staff assistance team. He did, however, establish a self-inspection program as directed.

(5) There is overwhelming evidence to indicate (applicant) did not have the support of his people.... Two branch chiefs stated they had been turned away when they sought technical assistance.

(6) Another factor which contributed to the low ratings during the ORI is poor management of personnel resources.

Records of Proceedings of the AFBCRM, pp. 35–39.

While plaintiff presents some evidence suggesting that he may have been treated unfairly,[5] he has not been able to sustain the heavy burden of establishing through clear and convincing evidence that the inquiry report was not an objective investigation of his removal from his position as Chief of the Procurement Division. If this court were sitting as the fact finder in this case, a different conclusion might have been reached from the one reached by the AFBCMR. However, that is not the test plaintiff must satisfy to prevail. Ratings and promotions are discretionary matters with which the court will continue to be "scrupulous not to intervene" unless clear error is shown. *See Orloff v. Willoughby,* 345 U.S. 83, 94, 73 S.Ct. 534, 540, 97 L.Ed. 842 (1953).

As stated in *Guy v. United States,* 221 Ct.Cl. 427, 433, 608 F.2d 867, 871 (1979):

[T]he process of evaluating officers by other officers is an inherently subjective process which neither the military boards nor this court will interfere with unless there is clear and convincing evidence of factors adversely affecting the ratings

---

4. Fifteen individuals, including plaintiff, were interviewed in the course of the inquiry.

5. For example, plaintiff was ordered to leave the division early on December 24, 1976 just prior to a Christmas party. He was ordered to return to clear out his desk only after everyone had gone home.

which had no business being in the process.

In light of the finding that the Air Force properly investigated plaintiff's complaint, it follows that plaintiff's records could not have been illegally tainted when considered by the selection boards. Absent clear and convincing evidence that the report is in error, the court must affirm the AFBCMR's decision. *Dorl v. United States,* 200 Ct.Cl. 626, 633, *cert. denied,* 414 U.S. 1032, 94 S.Ct. 461, 38 L.Ed.2d 323 (1973). Based on the record before the AFBCMR, there was substantial support for its decision that insufficient relevant evidence had been presented to demonstrate the existence of probable error or injustice. The decision of the AFBCMR was neither arbitrary nor capricious nor contrary to law.

### VI

For the foregoing reasons, plaintiff's motion for summary judgment is DENIED, and defendant's cross-motion for summary judgment is GRANTED. Judgment for defendant shall be entered accordingly.