**Gary C. HOFFMAN,**
**Plaintiff–Appellant,**

v.

**The UNITED STATES,**
**Defendant–Appellee.**

**No. 89–1427.**

United States Court of Appeals,
Federal Circuit.

Jan. 18, 1990.

Richard D. Marks, of Dow, Lohnes & Albertson, Washington, D.C., argued for plaintiff-appellant. With him on the brief was Leslie H. Wiesenfelder.

John S. Groat, of the Civil Div., Dept. of Justice, Washington, D.C., argued for defendant-appellee. With him on the brief were Stuart E. Schiffer, Acting Asst. Atty. Gen., David M. Cohen, Director, and Robert A. Reutershan, Asst. Director. Of counsel was Major Alice Kottmyer, Dept. of the Air Force.

Before RICH, Circuit Judge,
FRIEDMAN, Senior Circuit Judge,[*]
and NEWMAN, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

The issue in this case, here on appeal from the United States Claims Court, is whether that court correctly upheld the decision of the Air Force Board for the Correction of Military Records (Correction Board) that the appellant Hoffman was not entitled to set aside several of his low

---

[*] Judge Friedman took senior status on November 1, 1989.

Officer Efficiency Reports (OERs) and to be restored to active duty. Then Captain Hoffman was released from active duty after he had received the poor OERs. Hoffman contended before the Correction Board that he had been improperly relieved from his assignment as the Chief of Procurement at an Air Force base and that the removal tainted the OERs. The Correction Board rejected Hoffman's contentions. The Claims Court upheld the Correction Board's decision. *Hoffman v. United States*, 16 Cl.Ct. 406 (1989). We affirm.

I

A. For about ten years prior to April 1976, Hoffman served as an Air Force Procurement Officer. His last assignment before that date was as Chief of the Procurement Division at an Air Force base, where he performed outstandingly and received the highest possible ratings on 3 OERs.

In April 1976, then Captain Hoffman became chief of the Procurement Division at the 100th Air Refueling Wing at Beale Air Force Base in California. For the two years prior to Hoffman's appointment, the 100th Air Refueling Wing Procurement Division had had serious management problems and had been rated "unsatisfactory" by the Strategic Air Command. In the words of the Claims Court, Captain Hoffman "inherited a situation at Beale which had deteriorated to the point that immediate corrective action was required." 16 Cl.Ct. at 407.

Although Captain Hoffman endeavored to correct the situation, he was unsuccessful. In October 1976, six months after Captain Hoffman had taken over the Procurement Chief's position, the Inspector General of the Strategic Air Command "rated the division unsatisfactory for numerous deficiencies in procurement matters resulting from ineffective management and low morale within the division. As a result of the [Strategic Air Command] inspection failure, plaintiff was relieved of duty as Chief of the Procurement Division." 16 Cl.Ct. at 407. Captain Hoffman remained at Beale, where he was assigned other duties.

B. By letter to the Commanding General of the Strategic Air Command, Captain Hoffman "requested an investigation into the circumstances surrounding his removal, suggesting command mismanagement and questioning the appropriateness of the decision to remove him." *Id.* at 408. The Commanding General "ordered that an inquiry be conducted in accordance with Air Force Regulation 120–3 and authorized the appointment of '[a] senior officer, external to the 100 Air Refueling Wing, to inquire into the circumstances that led to [plaintiff's] removal.'" *Id.* (brackets in original).

The following chart shows the organizational relationship between the officer who conducted the inquiry and the chain of command involving that officer and Captain Hoffman's superiors:

14th Air Division
Beale Air Force Base, California
Brig. Gen. Melton, Commander

320th Bombardment Wing
Mather Air Force Base, California
  Col. Brashear,
  Vice Commander

100th Air Refueling Wing
Beale Air Force Base
  Col. Tobin, Commander

  Col. Autry, Vice–Commander

  Col. Bodenhamer, Deputy
  Commander for Resource
  Management

  Capt. Hoffman

General Melton ordered Colonel Brashear of the 320th Bombardment Wing to conduct the inquiry. This was in accordance with the direction of the Commanding General of the Strategic Air Command that the inquiry be conducted by a "senior officer, external to the 100 Air Refueling Wing." *See* 16 Cl.Ct. at 408.

After a three-day investigation, in which he interviewed fifteen people, including Captain Hoffman, Colonel Brashear concluded that the decision to remove Hoffman as Chief of the Procurement Division "was valid." Colonel Brashear reached the following conclusions:

a. The problems which existed within the Procurement Division when Captain Hoffman came on watch were deeply rooted and required an adept manager to correct.

b. Captain Hoffman has excellent technical knowledge of procurement functions, but is not an effective manager or leader.

c. Personnel vacancies, ineffective management of assigned personnel, and outside activities placed heavy demands on Captain Hoffman's time and significantly reduced his effectiveness.

d. Positive measures were initially taken by Captain Hoffman to improve the performance of the procurement division; however, he failed to adequately monitor programs to insure desired results were being achieved.

e. Captain Hoffman had very poor relations with his people and was unable to gain their confidence or generate the enthusiasm needed to enable the division to return to a satisfactory level of effectiveness.

Colonel Brashear recommended that Hoffman "be assigned to a position which would effectively use his procurement technical expertise, and afford him the opportunity to gain a better appreciation of human relations, management and leadership responsibilities."

In submitting his report of inquiry to the Inspector General of the Strategic Air Command, Colonel Brashear stated that the Commander of the 14th Air Division "concurs" in Colonel Brashear's "conclusions and recommendations" in the report. The Commander of the Strategic Air Command "concur[red]" in the action of Captain Hoffman's "removal from the procurement career field at Beale Air Force Base."

Beginning in October 1976, Captain Hoffman was passed over by Selection Boards four times for promotion to temporary major and twice for promotion to permanent major. As a result of the latter two passovers, Captain Hoffman's commission was terminated and he was discharged from active duty in April 1981.

C. Hoffman then filed an application with the Correction Board requesting, as the Correction Board stated, (1) that six OERs involving the years 1976 to 1980 "be voided and removed from his records," (2) that his passovers for his promotion to major "be set aside" and that he "be considered for, or promoted to, the permanent Regular grade of major." In a detailed report that considered Hoffman's contentions and evidence and responses by the Air Force that included a lengthy discussion and explanation of the application, the Board ruled that "[i]nsufficient relevant evidence has been presented to demonstrate the existence of probable error or injustice." The Board stated: "We are not persuaded that the removal of the applicant from his position as the Chief of the Base Procurement Division and the ensuing actions by Air Force authorities in response to his complaint were improper or in violation of the pertinent regulations." The Board concluded on this aspect of the case:

In summary, we find the removal of applicant from the position of Chief of the Procurement Division was adequately supported by the evidence of record and based on sound management princi-

ples; and that the subsequent investigation of his complaint was proper, and in substantial compliance with the pertinent regulations.

The Board further held:

Insufficient relevant evidence has been provided to show that applicant's OERs for the combined rating period 23 December 1975 through 7 May 1979 were inaccurate depictions of his performance and demonstrated potential for the referent periods.

The Board concluded that "we have no basis to warrant favorable consideration of applicant's requests that his nonselections for promotion be set aside, he be restored to active duty commissioned status; and his records be corrected to show he was promoted to permanent Regular Air Force grade of major."

D. Hoffman then filed the present action in the Claims Court, challenging the Correction Board's decision. On cross-motions for summary judgment, the court denied Hoffman's motion, granted the government's motion, and dismissed the case. The Court held that Hoffman "has not been able to sustain the heavy burden of establishing through clear and convincing evidence that the inquiry report was not an objective investigation of his removal from his position as Chief of the Procurement Division." 16 Cl.Ct. at 411. The court concluded:

In light of the finding that the Air Force properly investigated plaintiff's complaint, it follows that plaintiff's records could not have been illegally tainted when considered by the selection boards. Absent clear and convincing evidence that the report is in error, the court must affirm the [Correction Board's] decision. Based on the record before the [Correction Board], there was substantial support for its decision that insufficient relevant evidence had been presented to demonstrate the existence

of probable error or injustice. The decision of the [Correction Board] was neither arbitrary nor capricious nor contrary to law.

*Id.* at 412 (citation omitted).

## II

Before this court, Hoffman does not challenge his removal as Chief of Procurement. He contends only that, under the applicable Air Force regulations, Colonel Brashear was disqualified to conduct the inquiry into the removal, that the invalidity of the inquiry fatally tainted the subsequent OERs, to which he ascribes his nonpromotion to major and the subsequent release from active duty.

Air Force Regulation 120–3, pursuant to which the inquiry was conducted, states in paragraph 2:

**Air Force Policy.** Matters within the following areas will be investigated by an echelon of command compatible with a complete, impartial, and unbiased presentation of facts.

Hoffman contends that assigning Colonel Brashear to conduct the inquiry was not "compatible with a[n] ... impartial, and unbiased presentation of facts." Hoffman's argument, as summarized in his brief, is as follows:

General Melton was the "endorser," *i.e.,* the reviewer of Colonel Brashear's OERs prepared initially by Colonel Brashear's direct supervisor. Captain Hoffman charged that he was removed not because of inadequacies in his own performance but in an attempt to cover up mismanagement by Captain Hoffman's superiors in the 100th Air Refueling Wing. These superiors were Colonel Tobin, the Commander, Colonel Autry, the Vice Commander, and Colonel Bodenhamer, the Deputy Commander for Resources Management. Colonel Bodenhamer was the officer who removed Captain Hoffman from the Chief of Procurement position, and General Melton was the rater of Colonel Tobin and the endorser on Colonel Autry's OERs. If Colonel Brashear agreed with Captain Hoffman's charges, this would have reflected unfavorably on

"General Melton's own conduct," since the General

was vulnerable to criticism for failing to observe and correct the long-standing neglect of the base Procurement Division by his immediate subordinates, who were the top commanders at Beale. Such criticism would have had serious personal consequences for Gen. Melton within the Strategic Air Command. Col. Brashear could not conduct a complete and unbiased investigation of Capt. Hoffman's charges under these circumstances and therefore, under any reasonable interpretation of the regulation, he did not qualify to conduct the inquiry.

The illegally conducted inquiry tainted all subsequent OERs rendered on Capt. Hoffman.

■ A. It is doubtful whether Air Force Regulation 120–3 embodies a mandatory requirement that entitled Hoffman to challenge the inquiry as not in compliance with the regulation. Paragraph two of the regulation, which Hoffman asserts Colonel Brashear's inquiry violated, is captioned "Air Force Policy." The regulation itself states at the outset: "This regulation establishes policy and assigns responsibilities for all administrative inquiries and investigations within the Air Force, unless a specific regulation governs the investigation."

The situation here appears comparable to that in *Griessenauer v. Department of Energy*, 754 F.2d 361 (Fed.Cir.1985), where an employee challenging his resignation as involuntary, also contended that the Merit Systems Protection Board failed to give sufficient weight to provisions in the Federal Personnel Manual governing resignations. In rejecting the latter contention, the court stated:

The provisions are intended to aid government officials in handling resignations by suggesting procedures to be followed that will avoid or minimize subsequent disputes concerning the resignation and to strengthen the government's case in any litigation regarding it. They do not create any rights in an employee, and the government's failure to observe the suggestions does not provide a basis

for challenging the government's acceptance of an oral resignation.

*Id.* at 364. *See Horner v. Jeffrey*, 823 F.2d 1521, 1529 (Fed.Cir.1987) (en banc) (citing *Griessenauer* with apparent approval). *See also Facer v. Department of Air Force*, 836 F.2d 535, 540–41 (Fed.Cir.1988) ("[T]he remand should include, besides the matter taken up in part I of this discussion, consideration of AFR 40–750, concerning whether it is just a handbook or is really written to fasten legal consequences on the government....").

Although the facts in *Griessenauer* are quite different from those here, the court's reasoning supports the conclusion that Air Force Regulation 120–3(2) does "not create any rights in military personnel" to challenge an investigation for alleged noncompliance with its provisions. Rather, it appears that the regulation merely is "intended to aid [Air Force officers] in handling [investigations] by suggesting procedures to be followed."

■ B. In any event, Hoffman's argument is based upon speculation and conjecture. It provides no basis for reversing the Claims Court's affirmance of the decision of the Correction Board that the investigation Colonel Brashear conducted of Hoffman's removal "was proper, and in substantial compliance with the pertinent regulations."

In ordering the investigation, the Commanding General of the Strategic Air Command directed that it be conducted by a senior officer "external to the 100 Air Refueling Wing." Colonel Brashear met that requirement. He was not in the same chain of command as Captain Hoffman, he was assigned to a different unit, and had no authority over the Captain. The facts that Captain Hoffman alleged mismanagement by the top officers of the 100th Air Refueling Wing and that General Melton had command authority over both that unit and the unit of Colonel Brashear, which was situated at another Air Force base in California, do not establish that Colonel Brashear was incapable of making an "impartial and unbiased presentation of facts."

**385**

Military officers, like other public officials, are presumed to "discharge their duties correctly, lawfully, and in good faith." *Guy v. United States,* 608 F.2d 867, 870, 221 Ct.Cl. 427 (1979) (quoting *Sanders v. United States,* 594 F.2d 804, 813, 219 Ct.Cl. 285 (Ct.Cl.1979)). Hoffman's conjectural assumptions regarding the factors that could have motivated Colonel Brashear to reject Hoffman's charge of top officer mismanagement of the Procurement Division at the 100th Air Refueling Wing do not rebut that presumption. Nor do they show that Colonel Brashear's investigation actually, or was likely to have, involved a presentation of the facts that was neither "impartial" nor "unbiased" within the meaning of Air Force Regulation 120–3.

The present case stands in sharp contrast to *Engels v. United States,* 678 F.2d 173, 230 Ct.Cl. 465 (1982), upon which Hoffman relies. There the Court of Claims held that the Correction Board properly had expunged from Captain Engels' file two OERs in which "the raters' own evaluations were deliberately lowered by improper command influence, contrary to the regulations and the purpose of the OER system." *Id.* 678 F.2d at 176. The Correction Board had found that

> one of Engels's commanding officers, Colonel Watson, had coerced two others, Majors Ward and Melander, to downgrade the numerical rating on Engels's December 1974 OER. Under the threat of a deliberately prolonged stay in Korea, they gave Engels an 8/3 rating rather than the 9/4 they had originally intended. Major Ward also admitted adding negative written comments to the narrative portion of the evaluation, as a result of the "pressures/threats."

*Id.*

Unlike that case, in which the record showed, and the Correction Board found, clear evidence of improper command interference, here the claim that Colonel Brashear was (or, more accurately, might have been), biased and partial has no evidentiary basis at all. As noted, it rests upon hypothetical speculation and conjecture. We

have no basis for rejecting the decision of the Correction Board that Hoffman had not established a basis for correction of his military records. *See Sanders v. United States,* 594 F.2d at 813.

C. Our decision that Colonel Brashear's investigation was valid eliminates Hoffman's contention that the alleged invalidity of the investigation tainted the subsequent OERs and his nonpromotion to major.

### CONCLUSION

The judgment of the United States Claims Court granting the government's motion for summary judgment and dismissing the suit is

AFFIRMED.