Alger E. HASELRIG, Jr., Plaintiff,

v.

**UNITED STATES, Defendant.**

No. 99–908C.

United States Court of Federal Claims.

July 31, 2002.

Guy J. Ferrante, King & Everhard, P.C., Springfield, VA, attorney of record for the plaintiff.

Jonathan P. Sills, United States Department of Justice, Washington, DC; James M. Kinsella, Deputy Director; David M. Cohen, Director, Commercial Litigation Branch, for the defendant. Captain Andrew M. LeBlanc, Air Force General Litigation Division, of counsel.

## OPINION

HORN, Judge.

Plaintiff, Alger E. Haselrig, Jr., seeks relief from his nonselection for promotion which resulted in his honorable, but involuntary retirement from the United States Air Force. Major Haselrig was nonselected for promotion to lieutenant colonel on three occasions by regular promotion boards, and, pursuant to 10 U.S.C § 632 (1988), was involuntarily retired from the service. Following his retirement, the Air Force Board for Correction of Military Records (AFBCMR) determined that Mr. Haselrig's personnel records, which were used by all three lieutenant colonel promotion boards as the basis for his nonselection, were incorrect. The AFBCMR made corrections to Mr. Haselrig's personnel records, including the addition to the records of: an Officer Performance Report (OPR) closing March, 1991, higher performance ratings on two Officer Effectiveness Reports (OERs), completion of his Masters Degree in 1991, and two "Definitely Promote" recommendations. The AFBCMR also ordered that Special Selection Boards (SSBs) review the corrected records to determine whether the plaintiff should have been promoted by the CY (Calendar Year) 1985 Central Major Board, and if selected for major in 1985, whether he should have been promoted by the CY 1990A Central Lieutenant Colonel Board, the CY 1991A Lieutenant Colonel Board or any subsequent boards for which the corrections made to his records were not a matter of record. The plaintiff's involuntary retirement was upheld by the AFBCMR after he was considered for promotion, once successfully for major by the SSB and unsuccessfully on five separate occasions by the SSBs for lieutenant colonel.

The plaintiff requested reconsideration by the AFBCMR twice on the grounds that the actions of the SSBs failed to "replicate . . . to the maximum extent possible" the actions of regular promotion boards. The AFBCMR denied both of the plaintiff's requests for reconsideration. In this court, the plaintiff contends that the AFBCMR's denials of reconsideration were arbitrary, capricious, unsupported by the evidence, and contrary to law. Mr. Haselrig seeks an order directing

the Secretary of the Air Force to vacate his promotion nonselections and mandatory retirement from the Air Force, and award him back pay.

## FINDINGS OF FACT

Major Haselrig served as a commissioned officer in various capacities for the Air Force over a period of twenty years. He was not selected for promotion to lieutenant colonel In–the–Promotion–Zone (IPZ) by the 1991A promotion board on April 15, 1991, and also was not selected for promotion Above–the–Promotion–Zone (APZ) by the 1991B board on December 2, 1991.[1] Pursuant to 10 U.S.C. § 632 (1988), Major Haselrig, therefore, was eligible to be honorably, but involuntarily retired by the Air Force.[2] Nonetheless, he was selected for continuation on active duty.[3] Because Major Haselrig remained on active duty, he was still eligible for promotion to lieutenant colonel APZ. However, on November 16, 1992, he was not selected for promotion to lieutenant colonel APZ by the 1992 promotion board. His twenty years of service in the Air Force ended on October 31, 1993, and Major Haselrig was involuntarily retired from active duty pursuant to 10 U.S.C § 632.

On February 17, 1993, before he was involuntarily retired, the plaintiff petitioned the AFBCMR to make corrections to his military records pursuant to 10 U.S.C. § 1552 (1988). The plaintiff requested immediate promotion by the AFBCMR to lieutenant colonel, commensurate with the April, 1991 promotion cycle. Interwoven in his petition for correction to his military records, the plaintiff requested that his OERs[4] as a captain for March, 1978 and April, 1979 be amended to reflect "Well Above Standard" on all performance factors because Major Haselrig argued that the OERs, as graded, and his official records, "did not accurately reflect my performance or potential." The plaintiff also urged that statements should be added to his OER and OPRs during the period from March, 1987 to March, 1990, reflecting that his raters did not intend for the omission of recommendations to attend Professional Military Education (PME) schools to adversely impact his career advancement.[5]

---

1. Promotion boards are generally convened annually. However, "whenever the needs of the service require," the Secretary of the Military Department has the option to convene a promotion board. 10 U.S.C. § 611 (1980). Thus, in 1991, two lieutenant colonel promotion boards met, the 1991A board and the 1991B board.

 The 1991A promotion consideration was In–the–Promotion–Zone (IPZ), meaning that it was the first time Major Haselrig was eligible for promotion to the rank of lieutenant colonel. An officer who fails to be promoted IPZ is subsequently considered for promotion Above–the–Promotion–Zone (APZ). Although not relevant to this case, an officer also can be considered for promotion Below–the–Promotion–Zone (BPZ).

2. This involuntary retirement policy was developed "to maintain effective leadership by heightening competition for the higher ranks while providing junior officers with incentive and opportunity for promotion." *Schlesinger v. Ballard*, 419 U.S. 498, 502–03, 95 S.Ct. 572, 42 L.Ed.2d 610, *reh'g denied*, 420 U.S. 966, 95 S.Ct. 1363, 43 L.Ed.2d 446 (1975). "At the heart of this merit promotion system, and crucial to its effective functioning, is the requirement that officers twice passed over for promotion be discharged from active duty." *Hardison v. Alexander*, 655 F.2d 1281, 1284 (D.C.Cir.1981).

3. In relevant part, the statute provides that, under appropriate conditions, officers within two years of qualifying for retirement under 10 U.S.C. §§ 1911, 6323, or 8911, unless sooner retired or discharged under some other provision of law, may be retained on active duty until he or she is qualified for retirement. 10 U.S.C. § 632(a)(3); 10 U.S.C. 637(a)(5).

4. In an Officer Effectiveness Report (OER) and Officer Performance Report (OPR), raters are required to evaluate the potential of officers by comparing them with officers of the same grade. In these reports the performance of an officer is categorically ranked on a scale ranging from "Well Above Standard" to "Far Below Standard." The reports also contain additional comments by the raters in order to reflect the value of the officer by pointing to specific accomplishments. Previous to 1988, Major Haselrig's evaluations were recorded on OERs. Starting in 1988, all of the plaintiff's evaluations were recorded on OPRs.

5. As an indication that the omission of Professional Military Education recommendations was not intended by the raters to reflect adversely, Major Haselrig submitted to the AFBCMR letters from the raters of his OERs, clarifying their intent. One such example was the August 25, 1992 memorandum from Colonel H.S. Storer, Jr., which states:

 Please amend my indorsement of Major Haselrig's OPR, which closed out on 5 September 1989, to include the following:

Major Haselrig also requested that explanatory statements be added to his OER and OPRs, reflecting that he did not receive any higher level OER endorsements for the period from March, 1987 to March, 1989, because the policy of his command placed a ceiling on higher level endorsements.[6] Plaintiff also believed that his lack of higher level endorsements from June, 1987 to March, 1989 were the result of an Inspector General (IG) complaint he filed on May 8, 1986 against his superiors regarding what he believed was an unjust removal from his position due to his organization's poor performance during a Staff Assistance Visit (SAV). The IG inquiry "confirmed that applicant [Major Haselrig] did take action to resolve the administrative problems within the organization; however, most of the time, his efforts were rejected by his supervisor. . . ." Another change in his records that Major Haselrig requested was an upgrade of his Air Force Commendation Medal awarded in 1990 to a Meritorious Service Medal (MSM), due to his belief that his application for the MSM was unfairly "pigeonholed" by his superiors. Major Haselrig also requested removal of a letter of mitigation attached to his April 1979 OER and removal of all of the evidence from his records indicating that a correction was accomplished as a result of an appeal.

In claiming that his records were either in error or unjust, plaintiff submitted to the AFBCMR multiple letters urging correction from other officers. For example, in support of his application for correction, Major Haselrig submitted a October 23, 1992 letter from Colonel Larree D. Chetelat, who stated:

"Send to Senior Service School."
 Major Haselrig was well thought of, and definitely the kind of person who should have an opportunity to attend Senior Service School. The absence of a PME statement was based on guidance at the time, which precluded the rater from recommending such an indorsement. The missing PME statement was *not* intended to hinder Major Haselrig's career progression! Correcting this mistake will right an injustice never intended.
 (Emphasis in original.)

6. The plaintiff stated in his February, 1993 application to correct his military records that "higher level endorsement (Three and Four–Star) were unavailable to me as the result of my DCS's

I feel the statements and MSM narrative which Major Haselrig provided to me in his request for my support justify the likelihood that his performance during the period of the report exceeded that which the report indicates. I further contend that the three subsequent reports are a more accurate reflection of Major Haselrig's performance; and that the ratings of the 29 April 1979 report are the result of report lateness more than his performance/abilities.

Therefore, since I supervised and knew Colonel Daniels well, and I appear to be the only evaluator left, I feel confident that Colonel Daniels would concur with this effort to upgrade all the blocks in Section III to "Well Above Standard".

Major Haselrig's request for corrections to his personnel records was denied by the AFBCMR on October 6, 1993. The Board found that the majority of the requests included in plaintiff's application for relief were untimely, and that there was insufficient evidence to justify the other changes requested. Following his involuntary retirement, Mr. Haselrig renewed his request for reconsideration to the Board, but the request was denied again on May 2, 1994. On March 15, 1995, however, based on the Board's own motion for reconsideration, the AFBCMR waived the untimely filing of Mr. Haselrig's application for relief and ordered correction of the plaintiff's military records.[7] While the AFBCMR declined to directly promote Mr. Haselrig to lieutenant colonel, it did autho-

[Deputy Chief of Staff] policy on escalating reports."

7. The reason why the Board chose to reopen the plaintiff's case is not clear in the record. The Air Force Record of Proceedings simply states:
 After carefully considering all the circumstances of this case, we believe it is appropriate to reopen the applicant's case for reconsideration on our own motion. Likewise, after further study and analysis, we believe that the interest of justice warrants a waiver of the applicant's failure to timely file, and that his application should be resolved on its merits.
 The AFBCMR has the authority to excuse untimely filing in the interest of justice. 10 U.S.C. § 1552(b).

rize corrections to his personnel records.[8] As the plaintiff requested, several OERs were corrected to reflect a higher performance rating. The AFBCMR also ordered SSBs to be convened, pursuant to 10 U.S.C. § 628, to determine whether, but for the incorrect records, Mr. Haselrig would have been promoted to either major in 1985 [9] or to lieutenant colonel by the original promotion boards.[10]

Regular promotion boards determine who will be promoted by scoring the applicant's records and ranking them against the scores of other applicants in the same competitive category. Air Force Instruction (AFI) 36–2501, ¶ 2.13.1 (1996). For each promotion board, the Secretary of the military department establishes the maximum number of officers in each competitive category the board may recommend for promotion to the next higher grade. 10 U.S.C. § 615(b)(1) (1988). Each applicant's record is scored by the individual board members on a scale from six to ten, with ten being the highest score a record can receive. AFI 36–2501, ¶ 2.15. The board recorder totals the scores from each panel member for each individual record, lists all of the records in merit order based on the combined scores, and then applies the number of promotions available to the merit order, establishing a preliminary "cut line," above which candidates will be promoted to the next rank and below which they will be nonselected for promotion. AFI 36–2501, ¶ 2.19. A "gray" area is formed when the preliminary cut line falls between officers who have the same score. AFI 36–2501, ¶ 2.20. All of the records in the gray area are rescored by the Board, and the AFI 36–2501, paragraph 2.19 procedure is repeated until the cut line falls between officers having different scores. AFI 36–2501, ¶ 2.21.

SSB decisions on whether an officer would have been promoted upon corrected records stand in place of the earlier original selection board decision. 10 U.S.C. § 628(b)(2–3), (d)(2) (1988). The SSB operates by comparing an officer's corrected records with "benchmark records" of officers from the same year and competitive category, who were selected and were nonselected for promotion by the original selection board, to determine whether the officer would have been recommended for promotion by the original board, but for the uncorrected records. AFI 36–2501, ¶ 6.5.2. The SSB scores the corrected records along with ten benchmark records from the original promotion board, representing the five highest rated officers nonselected for promotion and the five lowest rated officers selected for pro-

---

8. In a September 12, 1997, memorandum prepared for the AFBCMR, the Air Force Chief, Appeals and SSB Branch Directorate of Personnel Program Management, stated:

Direct promotion has rarely been used and is probably beyond the powers of the Board. Both Congress and DOD have made clear their intent that errors ultimately affecting promotion should be resolved through the use of Special Selection Boards. See 10 U.S.C. 628(b) and DOD Directive 1320.11, para D. Air Force Policy mirrors that. AFI 36–2501, Chapter 6. Moreover, AF/JAG has opined repeatedly that the AFBCMR does not have the power to grant a direct promotion—that in promotion matters, the Board's statutory authority is limited to correcting military records which may have affected the promotion process and recommending SSB consideration in appropriate cases.... At a minimum, it is safe to say that the AFBCMR has not in the past (and likely will not in the future) considered direct promotion except in the most extraordinary circumstances where SSB consideration was deemed totally unworkable.

The memorandum cited to *Finkelstein v. United States* to argue that in accordance with 10 U.S.C.

§ 1552(d), the authority of the Board for Correction of Military Records is limited to correcting military records and the Board should not be in the business of promoting individual service members. *Finkelstein v. United States*, 29 Fed. Cl. 611, 627–28 (1993). *But see Porter v. United States*, 163 F.3d 1304, 1321–22 (Fed.Cir.1998), *reh'g denied and en banc suggestion declined, cert. denied*, 528 U.S. 809, 120 S.Ct. 41, 145 L.Ed.2d 37 (1999).

9. On February 25, 1985, based on uncorrected records, Captain Haselrig was nonselected for promotion to major IPZ to major by the original promotion board. He, however, was selected by the promotion board in 1986 for promotion APZ to major with the uncorrected records.

10. An SSB can be convened due to either: 1) administrative error; 2) legal error and material error, including when the board did not consider material information that should have been available that the officer should not have been able to discover by reasonable diligence; or 3) pursuant to a formal appeal at the AFBCMR. AFI 36–2501, ¶ 6.3.

motion, without knowing which record is actually the one being reconsidered. AFI 36–2501, ¶ 3.3. After the SSB scores the records, it is revealed which record was the one being reconsidered and which ones were the benchmark records. If the record being reconsidered scores higher than all the records of the nonselected benchmarks and ties at least one of the records of the selected benchmarks, the SSB will recommend the applicant for retroactive promotion. AFI 36–2501, ¶ 6.5.4.

As noted earlier, on March 15, 1995, the AFBCMR determined that an SSB should be convened to reconsider Mr. Haselrig for promotion IPZ to major in 1985, promotion to lieutenant colonel IPZ in 1991, and "for any subsequent boards for which the above referenced corrections were not a matter of record." In a June 21, 1995 letter from SSB Program Manager Steven M. Sheehan, Mr. Haselrig was invited to suggest additional corrections to his personnel records by submitting supporting documentation. On July 25, 1995, prior to SSB consideration, Mr. Haselrig asked the AFBCMR to directly promote him to lieutenant colonel and to add to his records two "Definite Promote" recommendations based on a letter of validation from the 1991 president of the Management Level Evaluation Board and a supportive letter from a retired colonel suggesting that based on performance, plaintiff should have been highly competitive for the 1990A Board.

The senior rater has three choices on a Promotion Recommendation Form (PRF) [11]: 1) Definitely Promote, 2) Promote, or 3) Do Not Promote this Board. Air Force Regulation (AFR) 36–10(C1) (Fig.4–1). A "Definite Promote" recommendation is the highest recommendation that can be given by a senior rater on a PRF. AFR 36–10(C1), ¶ 4–5(a). The number of "Definite Promotes" that a

senior rater can assign in any given period is strictly limited. AFR 36–10(C1), ¶ 4–5(a). Previously, Mr. Haselrig's records did not contain a 1990 PRF because he was never before considered for promotion in 1990, and his 1991 PRF for lieutenant colonel had a recommendation to "Promote." [12]

While the AFBCMR continued to review Mr. Haserlig's request for direct promotion and the addition of the PRFs with "Definite Promote" recommendations to his military records, he received SSB consideration on July 31, 1995, with corrected records, but was not selected by that SSB for either promotion IPZ to lieutenant colonel in 1991 or promotion APZ to lieutenant colonel in 1992. On September 15, 1995, the AFBCMR signed one of a series of addenda to its record of proceedings, again denying the plaintiff's request for a direct promotion. In this third addendum, the Board recommend further correcting plaintiff's records, to include corrected PRFs that contained the "Definite Promote" recommendations. The AFBCMR ordered that Mr. Haselrig be reconsidered by an SSB for promotion IPZ to lieutenant colonel in 1991, with the PRF for that year reflecting the "Definitely Promote" recommendation. The AFBCMR further stated:

> 2. If he [Mr. Haselrig] is selected for promotion to the grade of major by Special Selection Board (SSB) for the Calender Year 1985A (CY85A) Central Major Board, his record, to include the attached Promotion Recommendation Form (PRF) for the CY90A Central Lieutenant Colonel Board, [shall] be considered for promotion to the grade of lieutenant colonel by SSB for the CY90A Central Lieutenant Colonel Board. [13]

In sum, if Mr. Haselrig had been selected by the SSB for retroactive promotion IPZ to

---

**11.** A PRF form is a communication from a senior rater designed to assist promotion boards in determining those officers best qualified. AFR 36–10(C1), ¶ 1–8(a)(2). Raters grade officers to determine who are the most fit for promotion approximately 120 days before the promotion board is scheduled to convene. AFR 36–10(C1), ¶ 4–6(a).

**12.** Mr. Haselrig was not rated for promotion in 1990 since he was not IPZ for lieutenant colonel.

The 1990 PRF containing a "Definitely Promote" was a retroactive representation by the officer who was the senior rater in 1990, that he would have given Mr. Haselrig a "Definitely Promote" recommendation had he rated him in 1990.

**13.** The SSB selection process is identical for promotion to the grade of captain through colonel. AFI 36–2501, ¶ 6.3.

major (IPZ) for 1985, a year earlier than he actually was selected for promotion to major (in 1986), he would have been eligible for promotion IPZ to lieutenant colonel in 1990, a year earlier than he was previously considered for promotion IPZ to lieutenant colonel. Therefore, the SSB also was instructed to consider whether Mr. Haselrig would have been promoted IPZ by the original lieutenant colonel board in 1990, if the SSB found that plaintiff should have been promoted to major in 1985.

On November 13, 1995, an SSB retroactively selected Mr. Haselrig for promotion to major as of 1985, finding that if the 1985 original promotion board had considered his corrected records, Mr. Haselrig would have been selected for promotion to major. However, on March 25, 1996, pursuant to the September 15, 1995 order of the AFBCMR, an SSB considered Mr. Haselrig's corrected records, including the replacement 1991 PRF containing a recommendation to "Definitely Promote," but did not select him for promotion to lieutenant colonel for the year of 1991.

Because the SSB selected him for the promotion to major, retroactive to 1985, Mr. Haselrig became eligible for an IPZ promotion to lieutenant colonel in 1990. Before this selection for major, the first year he was considered for promotion to lieutenant colonel had been 1991. Recognizing that Mr. Haselrig's SSB selection for earlier promotion to major in 1985 would have made him eligible for promotion to lieutenant colonel a year earlier, the AFBCMR directed the SSB to consider Mr. Haselrig for promotion in 1990 and all subsequent boards for which the corrected records, including the "Definite Promote" recommendations, were not a matter of record. On July 29, 1996, the SSB considered Mr. Haselrig with his records corrected to include the 1990 PRF containing the "Definite Promote," but did not select him for promotion IPZ to lieutenant colonel retroactive for the year 1990. On November 18, 1996, the SSB reconsidered Mr. Haselrig for promotion APZ to lieutenant colonel in 1991 with the corrected records including the 1991 PRF containing a "Definitely Promote," but again he was nonselected. The Air Force relied on these last two nonselections for promotion to lieutenant colonel (IPZ in 1990 and APZ in 1991) as the basis for Mr. Haselrig's honorable, but involuntary retirement, because they are the only two SSBs for which the plaintiff's records were fully corrected and the promotion board years and promotion zones were properly identified.[14]

14. The following chart summarizes the promotion boards that considered Mr. Haselrig:

| DATE OF PROMOTION BOARD AND SSB | TYPE OF PROMOTION BOARD | GRADE | STATUS OF RECORDS | SELECTED/ NONSELECTED |
|---|---|---|---|---|
| February 25, 1985 | original promotion board (IPZ) | 0–4 | not corrected | nonselected |
| 1986 * | original promotion board (APZ) | 0–4 | not corrected | selected for promotion to major |
| April 15, 1991(A) ** | original promotion board (IPZ) | 0–5 | not corrected | nonselected |
| December 2, 1991(B) ** | original promotion board (APZ) | 0–5 | not corrected | nonselected |
| November 16, 1992 | original promotion board (APZ) | 0–5 | not corrected | nonselected |
| July 31, 1995 | SSB reviewing April 15, 1991(A) (IPZ) | 0–5 | corrected, but without "DP" | nonselected |
| July 31, 1995 | SSB reviewing | 0–5 | corrected | nonselected |

On June 9, 1997, Mr. Haselrig once again asked the AFBCMR to reopen its previous decisions and to grant him direct promotion to lieutenant colonel as of 1990, the first year he was eligible for promotion to that grade. His request to the AFBCMR was based on plaintiff's assertion that the SSB results did not "replicate central selection boards . . . to the maximum extent possible," as required by AFI 36–2501, paragraph 6.1. He subsequently argued to the Board that he was not provided a reasonable determination as to whether he would have been promoted. Mr. Haselrig attempted to demonstrate to the AFBCMR that he likely would have been promoted to lieutenant colonel in 1990 because he had a "Definitely Promote" recommendation in his records. Before the AFBCMR, he argued, based on data submitted to the court for the record titled "Officer Promotions," that 99.8 percent of the officers seeking promotion to lieutenant colonel who, similar to the plaintiff, had a "Definitely Promote" recommendation on their PRF, were promoted IPZ by the regular promotion board in 1990. Mr. Haselrig attempted to demonstrate to the AFBCMR that the SSB had erred because it treated his "Definite Promote" recommendation differently than

the original promotion board would have treated it. In a letter to the AFBCMR Executive Director, dated June 9, 1997, Mr. Haselrig stated that:

> based on conversations with HQ AFPC, none of the Benchmark Records making up the Sample Record Groups, for either Board [the 1990 SSB which convened on July 29, 1996 and the 1991 SSBs which convened on November 18, 1996], contained DPs [Definitely Promotes] . . . . Therefore, out of the eleven (11) records comprising the Sample Record Groups used in my reconsiderations, my record was the only one which contained DPs. Consequently, based on the statistical results of the original CY90 Board . . . . the results of the July 29, 1996 SSB did not come close to those of the original CY90 Board.

Mr. Haselrig argued that he had been disadvantaged because his military record was the only one considered by the SSB which contained a "Definite Promote" recommendation, yet he was not selected for promotion.

Mr. Haselrig made a Freedom of Information Act (FOIA) request for the score data

| | November 16, 1992 (APZ) | | | |
| --- | --- | --- | --- | --- |
| November 13, 1995 | SSB reviewing February 25, 1985 (IPZ) | 0–4 | corrected | selected for promotion to major |
| March 25, 1996 | SSB reviewing April 15, 1991(A) (IPZ) *** | 0–5 | corrected with "DP" | nonselected |
| July 29, 1996 | SSB reviewing January 16, 1990 (IPZ) *** | 0–5 | corrected with "DP" | nonselected |
| November 18, 1996 | SSB reviewing April 15, 1991(A) (APZ) *** | 0–5 | corrected with "DP" | nonselected |

* The exact date this board convened is not clear in the administrative record.

** In 1991, Mr. Haselrig received consideration from two separate promotion boards. They are represented as (A) and (B).

*** The AFBCMR had ordered the SSBs to consider Major Haselrig for retroactive promotion IPZ to lieutenant colonel for 1991 before he was selected by the SSB for retroactive promotion to major for 1985. Because he was selected for retroactive promotion to major in 1985, he was given consideration for promotion IPZ to lieutenant colonel in 1990. Therefore, in 1991 he should have received consideration APZ rather than IPZ. The final two SSBs (July 29, 1996, and November 18, 1996) are the only two boards in which Mr. Haselrig received consideration in the proper promotion zone, for the appropriate years, and with fully corrected records containing "Definite Promote" recommendations.

from the SSBs that considered him. However-er, he was notified in a letter from Head-quarters Air Force Personnel Center that the score data he requested no longer exist-ed, because "all score data for central boards as well as SSBs is temporary in nature, not retained in the permanent files, and is de-stroyed upon the approval of the board re-sults by the Assistant Secretary of Defense, Force Management Policy."

On June 2, 1998, in a fourth addendum to the AFBCMR Record of Proceedings, the Board refused Mr. Haselrig's request to re-consider the SSB's determination that he should not have been promoted in 1990, and denied his request for direct promotion. Mr. Haselrig again requested reconsideration by the AFBCMR on October 5, 2001. In this request, he presented statistical data from the answer to his FOIA request indicating that the SSBs had only a 21 percent pro-motion rate for officers, like himself, who had their PRFs corrected to indicate a "Definite-ly Promote." Mr. Haselrig's position before the AFBCMR was that SSBs had a signifi-cantly lower promotion rate than regular promotion boards because, he believed, the SSB standard for promotion was higher than the one used by the regular promotion boards. On October 19, 2001, the Deputy Executive Director for the AFBCMR in-formed the plaintiff that his request did not present any new evidence for consideration and declined to reopen plaintiff's case for reconsideration.

On October 29, 1999, Mr. Haselrig filed his original complaint in the United States Court of Federal Claims.[15] The complaint before the court seeks an order directing the Secre-tary of the Air Force to vacate plaintiff's promotion nonselections and mandatory re-tirement from the Air Force, and award him back pay. On January 4, 2000, a stay was granted by Judge Roger B. Andewelt, to whom the case had been assigned, pending reconsideration of the plaintiff's complaint before the AFBCMR. On September 5,

2001, the case was transferred to the under-signed judge due to the unfortunate death of Judge Andewelt.

After several conferences with the court to determine the status of the case, on March 15, 2002, the United States filed a Motion to Dismiss or, in the Alternative, for Judgment Upon the Administrative Record, contending that the plaintiff's claim presents a nonjusti-ciable issue because it seeks review of the substantive merits of the SSB's decision not to promote plaintiff and, even if it is found that the claim is justiciable, that the plaintiff has failed to show that the Air Force SSB procedures violate the governing statutes or regulation. On April 19, 2001, the plaintiff filed a Cross–Motion for Judgment on the Administrative Record, alleging that because his claim challenges the procedures underly-ing the SSB decisions, it presents a justicia-ble inquiry. Plaintiff also alleges that he is entitled to judgment on the administrative record because, according to the plaintiff, the SSB procedures, as conducted, constituted an impermissible interpretation of the applicable statutory and regulatory provisions. Oral argument on the cross-motions was held on June 28, 2002.

### DISCUSSION

*Jurisdiction and Justiciability*

 As an Air Force officer on active duty, plaintiff was entitled to pay and allow-ances pursuant to 37 U.S.C. § 204(a)(1) (2000). Mr. Haselrig alleges that he was improperly and involuntarily released from active duty and, therefore, is entitled to back pay and allowances. This court has jurisdic-tion over these claims pursuant to the Tucker Act, 28 U.S.C. § 1491 (2000). *See Adkins v. United States*, 68 F.3d 1317, 1321 (Fed.Cir. 1995), *reh'g denied* (1996) (improper and in-voluntary discharge is a basis for Tucker Act jurisdiction); *Sargisson v. United States*, 913 F.2d 918, 920 (Fed.Cir.), *reh'g denied* (1990);

---

**15.** The complaint was subsequently amended on December 15, 1999 to correct a misstatement in the original complaint by changing the para-graph reading that the actions of the SSBs "did replicate the actions of the regular promotion boards" to "did *not* replicate the actions of the

regular promotion boards." (Emphasis in origi-nal.) Plaintiff filed a second amended complaint on January 23, 2002, titled "First Supplemental Complaint," to reflect the AFBCMR's October, 2001 denial for reconsideration.

see also *Sanders v. United States*, 219 Ct.Cl. 285, 297, 594 F.2d 804, 810–11 (1979). The Tucker Act states, in relevant part:

> (a)(1) The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department
>
> . . . .
>
> (2) To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States. In any case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just.

28 U.S.C. § 1491(a)(1–2).

In this case, the court has been asked to determine whether the plaintiff's claims are justiciable and, if so, whether the SSB procedures are a permissible interpretation of both the congressional statute and the Air Force's own regulations. The defendant argues that the plaintiff's claim is nonjusticiable because it "is challenging the results of the SSBs' decisions, as opposed to the procedures employed to arrive at those results." In support of its Motion to Dismiss, defendant argues that the plaintiff's complaint "does not claim that any procedure employed by the SSBs violated the regulatory or statutory guidance, but rather, that the SSBs simply arrived at the incorrect result." The defendant further contends that the plaintiff's case rests on what the defendant believes is an erroneous theory, "that an SSB must replicate not only the procedures of the central selection board, but it must also replicate the *results*." (Emphasis in original.) Because, according to the defendant, the complaint calls for the court to review the promotion decisions of the SSB, the defendant argues that "review of those promotion

determinations are outside the purview of this Court."

Plaintiff's complaint and later filings, however, do challenge the procedures employed by the SSBs in reaching those results. Mr. Haselrig asserts that the means employed by the SSBs are unreasonable because they are inconsistent with both congressional statute and Air Force regulation. *See* 10 U.S.C. § 628 (1988); AFI 36–2501, ¶ 6.1. Rather than challenging the merits of the decisions of the AFBCMR and the SSBs, the plaintiff has pointed out two binding provisions, one in the United States Code, 10 U.S.C. § 628, and one in Air Force regulations, AFI 36–2501, to argue that the procedures utilized by the Air Force in operating the SSBs are in conflict with the mandate of these provisions. First, Mr. Haselrig quotes the legislative history to 10 U.S.C. § 628 and alleges that the procedures established by the Air Force fail to "make a reasonable determination as to whether the officer would have been selected if his pertinent records had been considered by the prior board, unfettered by material error." H.R.Rep. No. 1462, Defense Officer Personnel Management Act, 96th Cong., 2d Sess. 74 (1980), U.S.Code Cong. & Admin.News 1980, pp. 6333, 6377. Second, plaintiff points to the Air Force's own regulations and the requirement that the SSBs "replicate central selection boards . . . to the maximum extent possible," and argues that the operations of the SSB fail to comply with this directive in AFI 36–2501, paragraph 6.1. Plaintiff argues that government officials "must follow their own regulations," and a violation of the regulatory procedures presents a justiciable issue to the court, citing *Voge v. United States*, 844 F.2d 776, 779 (Fed.Cir.), *cert. denied*, 488 U.S. 941, 109 S.Ct. 365, 102 L.Ed.2d 355 (1988).

The Supreme Court of the United States has addressed justiciability as follows: "In the instance of nonjusticiability [as opposed to lack of jurisdiction], consideration of the cause is not wholly and immediately foreclosed; rather, the Court's inquiry necessarily proceeds to the point of deciding whether the duty asserted can be judicially identified and its breach judicially determined, and whether protection for the right asserted can be judi-

cially molded." *Baker v. Carr,* 369 U.S. 186, 198, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). Similarly, the United States Court of Appeals for the Federal Circuit has held, in military pay cases, that an issue "is 'justiciable' only if it is 'one which the courts can finally and effectively decide, under tests and standards which they can soundly administer within their special field of competence.'" *Voge v. United States,* 844 F.2d at 780 (quoting *Greene v. McElroy,* 254 F.2d 944, 953 (D.C.Cir.1958), *rev'd on other grounds,* 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959)). *Accord Adkins v. United States,* 68 F.3d at 1322; *Sargisson v. United States,* 913 F.2d at 922; *see also Murphy v. United States,* 993 F.2d 871, 873 (Fed.Cir.), *reh'g denied and en banc suggestion declined* (1993), *cert. denied,* 511 U.S. 1019, 114 S.Ct. 1402, 128 L.Ed.2d 75, *reh'g denied,* 511 U.S. 1118, 114 S.Ct. 2123, 128 L.Ed.2d 681 (1994).

■ In *Adkins,* the United States Court of Appeals for the Federal Circuit further defined the distinction between what is reviewable and what is not:

Not every claim arising from a military decision presents a nonjusticiable controversy, however. This court has consistently recognized that, although the *merits* of a decision committed wholly to the discretion of the military are not subject to judicial review, a challenge to the particular *procedure* followed in rendering a military decision may present a justiciable controversy. *See, e.g., Murphy,* 993 F.2d at 873 ("A court may appropriately decide whether the military followed procedures because by their nature the procedures limit the military's discretion."); *Dodson v. Department of Army,* 988 F.2d 1199, 1207 n. 7 (Fed.Cir.1993) (reviewing the procedural regularity of the challenged action, but not the substance of the Army's decision); *Sargisson,* 913 F.2d at 921 (although the "statute does not place any procedural or substantive limitations on the Secretary's discretion[,] once the Secretary promulgated regulations and instructions and made them the basis for [the challenged decision,] his action became subject to judicial review for compliance with those regulations and instructions." (citation omitted));

*Voge* [*v. United States,* 844 F.2d 776, 779 (Fed.Cir.1988) ] ("[T]he Claims Court may review the [challenged] process for compliance with established procedures."); *Koster v. United States,* 231 Ct.Cl. 301, 685 F.2d 407, 412 (1982) (finding jurisdiction to review procedural aspects of a decision of the Secretary of the Army, acting on behalf of the President). Other Circuit Courts of Appeals have recognized a similar distinction. *See, e.g., Watson v. Arkansas Nat'l Guard,* 886 F.2d 1004, 1011 n. 16 (8th Cir.1989) ("[A]djudication of [plaintiff's] claims requires the district court to determine only whether the Secretary's decision making process was deficient, not whether his decision was correct."); *Kreis v. Secretary of Air Force,* 866 F.2d 1508, 1511 (D.C.Cir.1989) (same).

*Adkins v. United States,* 68 F.3d at 1323 (footnote omitted; alterations in original).

■ Courts normally defer to the specialized experience of military decision makers on substantive personnel decisions by the service secretary. *See Doggett v. United States,* 207 Ct.Cl. at 482. In *Orloff v. Willoughby,* the Supreme Court of the United States expressed the following view:

[J]udges are not given the task of running the Army. The responsibility for setting up channels through which such grievances can be considered and fairly settled rests upon the Congress and upon the President of the United States and his subordinates. The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters.

*Orloff v. Willoughby,* 345 U.S. 83, 94, 73 S.Ct. 534, 97 L.Ed. 842 (1953).

Likewise, the United States Court of Appeals for the Federal Circuit has stated that:

The merits of a service secretary's decision regarding military affairs are unquestionably beyond the competence of the judiciary to review. *See, e.g., Orloff* [*v. Willoughby,* 345 U.S. 83, 94, 73 S.Ct. 534, 97 L.Ed. 842 (1953) ] ("While the courts have found occasion to determine whether one has

been lawfully inducted and is therefore within the jurisdiction of the Army and subject to its orders, we have found no case where this Court has assumed to revise duty orders as to one lawfully in the service."); *Murphy [v. United States]*, 993 F.2d 871, 874 (Fed.Cir.1993) ("[T]he merits of the Air Force's decision to release [this officer] from active duty are beyond judicial reach."); *Sargisson [v. United States,* 913 F.2d 918, 922 (Fed.Cir.1990)] ("A court lacks the special expertise needed to review reserve officers' records and rank them on the basis of relative merit."); *Doggett v. United States,* 207 Ct.Cl. 478, 482, 1975 WL 22827 (1975) ("We have repeatedly refused to interject ourselves into the discretionary military promotion process even if legal error was in some respect committed as to the complaining serviceman."); *Heisig [v. United States,* 719 F.2d 1153, 1156 (Fed.Cir.1983)] ("[R]esponsibility for determining who is fit or unfit to serve in the armed services is not a judicial province. . . ."); *Sanders v. United States,* 219 Ct.Cl. 285, 594 F.2d 804, 813 (1979) ("Strong policies compel the court to allow the widest possible latitude to the armed services in their administration of personnel matters.").

*Adkins v. United States,* 68 F.3d at 1322–23.

■ In support of its position, that plaintiff's claims are nonjusticiable and, therefore, should be dismissed, defendant attempts to rely on decisions issued by the United States Court of Appeals for the Federal Circuit in *Murphy v. United States* and *Sargisson v. United States.* In *Murphy,* the plaintiff challenged the AFBCMR's decisions not to correct alleged errors to his military records as arbitrary and capricious. *Murphy v. United States,* 993 F.2d at 872. The court found that the claim was nonjusticiable because there was no statute or regulation limiting the discretion of the AFBCMR in deciding when to make changes to an officer's military records. *See id.* at 874. In *Sargisson,* the plaintiff challenged as arbitrary and capricious the AFBCMR's decision not to recommend reinstatement after making a correction to his records. *Sargisson v. United States,* 913 F.2d at 920. The court held that this claim was nonjusticiable be-

cause the statutes and regulations did not "place any procedural or substantive limitations on the Secretary's discretion," *id.* at 921, or establish any tests or standards by which the Court could decide whether plaintiff's release from active duty was correct. *Id.* at 922.

These two cases, however, are distinguishable from the present case because the statute, 10 U.S.C. § 628, and the regulation, AFI 36–2501, give guidance and limit the discretion of the SSBs regarding how they should be operated. The statute states:

A special selection board . . . shall consider the record of the person whose name was referred to it for consideration as that record, if corrected, would have appeared to the board that considered him. That record shall be compared with the records of a sampling of those officers of the same competitive category who were recommended for promotion, and those officers who were not recommended for promotion, by the board that considered him.

10 U.S.C. § 628(b)(2).

The legislative history to 10 U.S.C. § 628(b) also states that "[t]he purpose of this subsection is to provide a means to make a reasonable determination as to whether the officer would have been selected if his pertinent records had been properly considered by the prior board, unfettered by material error." H.R.Rep. No. 1462, Defense Officer Personnel Management Act, 96th Cong., 2d Sess. 74 (1980), U.S.Code Cong. & Admin.News 1980, pp. 6333, 6377. Subsequently, the United States Court of Appeals for the Federal Circuit has cited as instructive and adopted this selection of legislative history as direction for SSB's. *Porter v. United States,* 163 F.3d at 1315, 1324 ("[I]n order for an SSB to perform lawfully, it must yield—as Congress expected—a 'reasonable determination as to whether the officer would have been selected if his pertinent records had been properly considered by the prior board, unfettered by material error.'"). The regulations direct SSBs to "replicate" the procedures of the original promotion board "to the maximum extent possible." AFI 36–2501, ¶ 6.1. These provisions and the decision in

*Porter* have the effect of constraining the Air Force's discretion regarding the operation of the SSBs.

The facts in *Adkins v. United States*, more closely resemble those of the case before this court, than do the facts in *Murphy* or *Sargisson*. In *Adkins*, the plaintiff challenged the decision of the Secretary of the Army rejecting the Army Board for Correction of Military Records (ABCMR) recommendation that certain information be removed from the plaintiff's personnel records. *Adkins v. United States*, 68 F.3d at 1318. Mr. Adkins contended that in rejecting the recommendations of the ABCMR, the Secretary improperly considered material outside the records and that plaintiff was not given the opportunity to rebut the evidence used from outside the records. *Id.* at 1325–26. The Federal Circuit held that the first claim was justiciable because "we have held that § 1552 means ... that 'the Secretary must base his decision on the record as the board presents it to him.'" *Id.* at 1325 (quoting *Selman v. United States*, 723 F.2d 877, 880 (Fed.Cir.1983)) (citing *Weiss v. United States*, 187 Ct.Cl. 1, 408 F.2d 416 (1969)). The court found the second claim also was justiciable because under the Army's own regulations, the applicant is assured access to all of the records necessary to the case. *See Adkins v. United States*, 68 F.3d at 1325.

The fact pattern presented by Mr. Haselrig does not establish as clear a statutory, regulatory, or procedural violation as did the fact pattern in *Adkins*. The United States Court of Appeals for the Federal Circuit, however, has found that a claim is justiciable, when faced with a not completely precise statutory standard. For example, in "passover" cases the Federal Circuit has ruled that in order to comply with 10 U.S.C. § 8442(c) (1976) (repealed 1980), the records had to portray an officer's career in a "fair and equitable" manner. *Sargisson v. United States*, 913 F.2d at 922. The courts also have ruled on cases in which the plaintiff alleged a violation of a "fair and equitable" standard. *See Engels v. United States*, 230 Ct.Cl. 465, 472, 678 F.2d 173, 177 (1982), *opinion supplemented*, 2 Cl.Ct. 166 (1983); *Hary v. United States*, 223 Ct.Cl. 10, 20, 618 F.2d 704, 709

(1980); *Sanders v. United States*, 219 Ct.Cl. at 302, 594 F.2d at 814. Therefore, the courts have not required the statute to set a standard with exact criteria in order for a challenge to be justiciable.

Despite the lack of a precisely defined standard in 10 U.S.C. § 628 and AFI 36–2501, this court finds that the claim presented by the plaintiff has presented a direct challenge to the procedural operations of the SSBs. Although, in *Porter v. United States*, a claim that the Air Force SSBs used an impermissible "supercompetitive" standard and, therefore, deprived the plaintiff of a "reasonable determination" of his promotion possibilities failed, the challenge was unsuccessful because of "other factual information in the record that undercut Porter's claim that an impermissible supercompetitive standard had been applied to him." *Porter v. United States*, 163 F.3d at 1325. Nevertheless, the Federal Circuit in *Porter* directly opened the door to challenges to the SSB procedure when it stated: "[i]f an officer meets an SSB unsuccessfully and can point to a material flaw in the SSB's procedures arguably undermining the SSB's nonselection judgment, he may petition the corrections board to alter or void the SSB's decision." *Id.* at 1325. A review of the claimed defective procedures is then justiciable in the United States Court of Federal Claims. *See id.* at 1312.

The statute, 10 U.S.C. § 628, and the regulatory provisions in AFI 36–2501 must be complied with by the SSBs when performing the tasks assigned. Therefore, based on the above discussion, this court may, without intruding on any decision properly reserved only to the military, determine whether the procedures employed were in violation of statute or regulation.

*Judgment on the Administrative Record*

This claim comes before the court on Cross–Motions for Judgment on the Administrative Record. Plaintiff has alleged that, in denying him relief because of excessive standard which the SSBs applied, the actions of the AFCBMR were arbitrary, capricious, unsupported by the evidence, and contrary to law. Plaintiff argues that the legislative history of 10 U.S.C. § 628 supports his claims. The plaintiff contends that the SSB proce-

dures, as established by the Air Force, do not yield, in the words of the legislative history, a "reasonable determination" as to whether the officer would have been selected by the original board or in the words of the Air Force regulation, "replicate central selection boards ... to the maximum extent possible." The defendant counters that it is entitled to judgment because "Mr. Haselrig has failed to show that the Air Force SSB procedures are not a permissible interpretation of the statute," and that the SSB violated its own regulations.

■ When a plaintiff challenges an adverse military personnel decision, the applicable standard of review is whether the adverse decision "was arbitrary, or capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation or mandatory published procedure of a substantive nature, by which a plaintiff has been seriously prejudiced, and money is due." *Sanders v. United States*, 219 Ct.Cl. at 298, 594 F.2d at 811; *see also Chappell v. Wallace*, 462 U.S. 296, 303, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983) (citing *Grieg v. United States*, 226 Ct.Cl. 258, 640 F.2d 1261 (1981), *cert. denied*, 455 U.S. 907, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982) and *Sanders*); *Porter v. United States*, 163 F.3d at 1312; *Doe v. United States*, 132 F.3d 1430, 1434 (Fed.Cir. 1997); *Wronke v. Marsh*, 787 F.2d 1569, 1571–72, 1576 (Fed.Cir.), *cert. denied*, 479 U.S. 853, 107 S.Ct. 188, 93 L.Ed.2d 121 (1986).

■ In order to determine whether the plaintiff has proven that the actions of the AFBCMR in refusing to void the decisions of the SSB were arbitrary, capricious, unsupported by evidence, or contrary to law, this court must decide whether the procedures adopted and the regulations promulgated by the Air Force for operation of the SSBs are a permissible interpretation of both the statutory and regulatory mandate. *Small v. United States*, 158 F.3d 576, 580–81 (Fed.Cir. 1998), *aff'd on reh'g*, 180 F.3d 1343 (Fed. Cir.), *cert. denied*, 528 U.S. 821, 120 S.Ct. 64, 145 L.Ed.2d 55 (1999). The United States Supreme Court in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), *reh'g denied*, 468 U.S. 1227, 105 S.Ct. 28, 82 L.Ed.2d 921 (1984), has offered guidance regarding how to make such a determination, as follows:

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Id.* at 842–43, 104 S.Ct. 2778.

In deciding whether the procedures adopted by the SSB were a permissible interpretation of the statute, "[t]his court is not in a position under *Chevron* to impose its statutory construction for that of the Air Force when it finds that the statutory construction provided by the agency is a permissible one." *Small v. United States*, 158 F.3d at 581. Congress has given the military considerable discretion to implement the statute to decide how to operate SSBs. A close look at the statute mandating the creation of SSBs reveals how little Congress chose to regulate the procedure or restrict the agency's discretion. The statute, 10 U.S.C. § 628, in relevant parts, reads:

> (b) *Persons considered by promotion boards in unfair manner.—(1)* If the Secretary of the military department concerned determines, in the case of a person who was considered for selection for promotion by a promotion board but was not selected, that there was material unfairness with respect to that person, the Secretary may convene a special selection board under this subsection to determine

whether that person (whether or not then on active duty) should be recommended for promotion. In order to determine that there was material unfairness, the Secretary must determine that—

(A) the action of the promotion board that considered the person was contrary to law or involved material error of fact or material administrative error; or

(B) the board did not have before it for its consideration material information.

(2) A special selection board convened under paragraph (1) shall consider the record of the person whose name was referred to it for consideration as that record, if corrected, would have appeared to the board that considered him. That record shall be compared with the records of a sampling of those officers of the same competitive category who were recommended for promotion, and those officers who were not recommended for promotion, by the board that considered him.

10 U.S.C. § 628(b)(1–2).

To determine whether the procedures adopted by the Air Force to regulate the SSBs are a permissible interpretation pursuant to 10 U.S.C. § 628(b)(2), this court must compare AFI 36–2501, paragraph 6 with the statute to reveal whether the regulations conform with the language and intent of the statute. The statute at issue states that the records in question "shall be compared with the records of a sampling of those officers of the same competitive category who were recommended for promotion, and those officers who were not recommended for promotion" by the original board in the same competitive category. 10 U.S.C. § 628(b)(2). The Air Force has followed this mandate by providing that the SSBs "[c]onsider the records of officers as they would have appeared to the original board had the officers been properly considered" and "[c]ompare the officers' records with benchmark records from the original boards" using the same scoring methodology as prescribed for the original boards. AFI 36–2501, ¶¶ 6.5.2, 6.5.3. In *Porter*, the

court wrote: "In order for an SSB to perform lawfully, it must yield—as Congress expected—a 'reasonable determination as to whether the officer would have been selected if his pertinent records had been properly considered by the prior board, unfettered by material error.'" *Porter v. United States*, 163 F.3d at 1324 (*citing* the legislative history of 10 U.S.C. § 628 in H.R.Rep. No. 96–1462, at 74 (1980)), U.S.Code Cong. & Admin.News 1980, pp. 6333, 6377.[16]

The plaintiff, however, contends that the procedures violate the legislative intent of 10 U.S.C. § 628. Therefore, the plaintiff cites to violations by the defendant of the Air Force's own regulations, because of the requirement in AFI 36–2501 to "replicate central selection boards ... to the maximum extent possible." AFI 36–2501, ¶ 6.1. The Air Force Instruction states in full:

> 6.1. *Holding SSBs.* HQ AFPC/DPPB conducts promotion SSBs to consider officers when they did not meet a board or were improperly considered by one or more central selection boards. SSBs replicate central selection boards, to include pre— and post-board procedures and policies as outlined in chapters 1 through 5 of this instruction, to the maximum extent possible.

AFI 36–2501, ¶ 6.1.

In claiming that the means employed by the SSBs fail to make a "reasonable determination," or "replicate central selection boards," the plaintiff points to certain specific procedures employed by the SSBs which plaintiff argues rendered his chances of selection for promotion considerably lower than they would have been in front of the original promotion boards. Paragraph 6.5.4 of AFI 36–2501 specifies that officers will not be recommended for promotion, unless "his or her record scores higher than all the nonselect records and ties at least one of the selected records from the original board." As evidence of this allegedly excessive standard, the plaintiff argues that because his records must score better than all of the

---

**16.** The court in *Porter* used the language of the statute and this portion of legislative history to determine that Congress intended: "(1) an SSB's decision to relate back to the date of the original

selection board's decision; and (2) for the SSB's decision to stand in place of the earlier selection board decision." *Porter v. United States,* 163 F.3d at 1315.

nonselect records and tie or exceed at least one of the select records, his chances of promotion were significantly less, because he "could not be promoted by an SSB unless his record scored above the bottom 50% of the SSB records," while the procedure followed by the original 1990 board yielded a 64.2 percent promotion rate. Second, the plaintiff contends that SSB candidates "compete against 'the best' from the entire regular promotion board," as opposed to in the regular promotion boards where candidates for promotion are randomly assembled into panels, which further decreased his promotion chances. Third, the plaintiff cites statistical data, which he believes supports his argument that the SSB failed to give "Definite Promote" recommendations credence comparable to that of the original selection board. Finally, plaintiff alleges that the SSB's rescoring of the records and subsequent comparison to the merit order ranking from the original board, "will skew the comparative process and make the reconsideree's chances of selection much more difficult than at the original central board."

The plaintiff's first contention is that in the 1990 promotion board he had a 64.2 percent chance of being promoted, but in the SSBs he had to score better than all of the nonselect benchmarks and equal at least one of the select benchmarks; therefore, at best, plaintiff argues, he had to achieve a score above the bottom 50 percent to have a chance of promotion. For example, the data submitted to the court for the record titled "Officer Promotions" reflects that 64.2 percent of the officers who contended for IPZ promotion to lieutenant colonel in 1990 were selected for promotion. This rate was in line with the average overall selection rate for promotion to lieutenant colonel, which for the years from 1989 to 1996 was 64.1 percent. The plaintiff's allegation that the SSB's selection process promoted only those above 50 percent is misleading. Plaintiff's argument does not take into account the fact that the benchmark records at the SSB represent those individuals who the original promotion board ranked near the cut line. These benchmark

records are among the five lowest scoring records selected for promotion and the five highest scoring records which were not selected for promotion. AFI 36–2501, ¶ 3.3.3. The benchmark records selected are those close to the 35.8 percentile [17] that represented the cut line for the 1990 promotion board. The purpose of the SSB procedure is to recreate the cut line to determine whether the applicant's corrected records scores above it. Therefore, under the SSB procedure, the plaintiff had approximately the same percent chance of being promoted. For this reason, the plaintiff's first contention is not persuasive.

Second, Mr. Haselrig contends that the "SSB candidates compete against 'the best' from the entire regular promotion board," thereby "insuring that no one except perhaps Colin Powell would ever have a chance of promotion through the SSB process." As evidence of this argument, plaintiff refers to an Air Force document in the supplemental record titled *Talking Paper on Selecting Benchmark Records,*" which states that the recorder should choose "the *best* 5 select and 5 nonselect records," which the plaintiff interprets as "the best from the entire regular promotion board." (Emphasis in original.) The chosen benchmarks, however, are not the best of the entire original promotion board, but are chosen as the most representative of the area directly above and below the cut line. The best of the entire promotion board would be those individuals who had scored at the top of the percentile rankings. For example, the benchmark records actually used at the SSB for the CY 1990 promotion board scored in the gray zone area around the 35.8 percentile. For this reason, the plaintiff's argument that the SSB process somehow put him in direct competition with the best of the original promotion board is without merit.

Third, plaintiff contends that the statistical results from SSBs deviate so much from those of the original promotion boards that there is clearly something wrong with the procedure used to achieve the SSB results

17. Because 64.2 percent of the officers considered by the 1990 promotion board were selected for promotion, subtracting 64.2 from 100 indicates that the officers who were not promoted ranked at or below the 35.8 percentile.

in the case of officers with "Definite Promote" recommendations in their records. Plaintiff points to documents submitted to the court to argue that there was a difference in promotion rates between the SSB and the original board for those officers who had a "Definitely Promote" recommendation.[18] According to the data submitted to the court in the report titled "Officer Promotions," the 1990 board had a 99.8 percent IPZ promotion rate for officers with a "Definite Promote" recommendation on their PRF in 1990, seeking promotion to lieutenant colonel. Overall, from the years 1989–1996, 99.7 percent of applicants for a promotion to lieutenant colonel with a definite promote on their records were selected.[19]

SSBs cannot be expected to score the records in exactly the same way that the original board did, nor does the statute require the SSBs to do so. Section 628 calls for a special selection board to make the determination of whether the officer would have been promoted by the original board. 10 U.S.C. § 628(a)(1), (b)(1). The statute does not require that the panel be made up of the same personnel who sat on the original selection board. In fact, it would be difficult, if not impossible, for any branch of the military to reconvene a past board with each of the past promotion board members to make the determination, given the turnover rate and reassignment of personnel. Different members of a board will score the same records differently. Therefore, because it is reasonable to expect that the SSB's merit order ranking may not mirror the rankings of the original board, some resulting statistical disparity is not compelling.

Moreover, even if the statistical disparity between the promotion rates by the SSB and the original promotion board for officers with "Definitely Promote" recommendations were dramatic, it would not be enough for the court to make the determination that the SSB procedures were fatally flawed. During oral argument, plaintiff's counsel stated that this statistical data was a "manifestation of the standard that we presume they follow." While statistical data can raise the question of whether or not SSB procedures may be flawed, the data itself is not dispositive on the issue. Plaintiff must identify and establish a specific flaw in the procedures the SSBs used to reach its decision in order for the court to find the SSB procedures are inconsistent with 10 U.S.C. § 628 and AFI 36–2501, paragraph 6.1. For the court to make a determination based exclusively on statistical data asks the court to look into the substantive merits of promotion decisions by the military, which are nonjusticiable. *See, e.g., Orloff v. Willoughby,* 345 U.S. at 94, 73 S.Ct. 534. The plaintiff in *Sargisson* tried to rely on statistical data to support his claim against the Board. *Sargisson v. United States,* 913 F.2d at 920. In *Sargisson,* the Federal Circuit stated:

> A court lacks the special expertise needed to review reserve officers' records and rank them on the basis of relative merit. To act on our suspicion that in light of the small percentage of officers released the OER did matter, would be to second-guess the board's determination on no more than speculation.

*Sargisson v. United States,* 913 F.2d at 922. The statistical data presented by the plaintiff is not conclusive evidence that the Air Force's SSB procedure failed to make a "reasonable determination" of whether the plaintiff would have been promoted by the original board or failed to "replicate" the

---

18. Plaintiff tries to rely on a May 16, 1997 letter from Headquarters Air Force Personnel Center (AFPC), responding to his FOIA request, to argue that the selection rate for officers with "Definitely Promotes" was much lower for the SSBs, and that only about 21 percent of those officers who had upgraded their PRFs to include "Definitely Promotes" were selected for promotion by the SSBs. Plaintiff relies on this statistical data to support his argument that the SSBs fail to give "Definitely Promote" recommendations comparable credence as is given in the original selection board. The defendant, however, argues that

the FOIA response lacks context. Defendant is correct, in that the summary data generated to respond to plaintiff's FOIA request does not reveal the years at issue or the promotion categories the boards were considering and, therefore, cannot be relied on to document plaintiff's argument.

19. This figure was derived by adding the rates of promotion for the eight lieutenant colonel boards which met from 1989 to 1996 and dividing by eight.

procedures of the original selection board "to the maximum extent possible." 10 U.S.C. § 628; AFI 36–2501, ¶ 6.1.

Finally, plaintiff argues that the SSB process is flawed because the benchmark records are rescored by the SSB using the same procedures employed by the original promotion board. *See* AFI 36–2501, ¶ 6.5.4.[20] Both parties agree that as a result of this procedure, the benchmark records could be scored differently by the SSBs than they were by the original selection board, because the SSBs may not rank the benchmark officers in the same order as did the original selection board. According to the plaintiff, when a nonselect benchmark is rescored, "that non-select benchmark will receive a much higher relative score than its non-select status would suggest." The plaintiff contends that because the SSBs rely on the records' ranking as set by the original board after the SSB rescores the individual applicants for promotion, the procedures violate the statute and regulation and that "each incremental increase in the standing of a non-select benchmark drastically decreased a reconsidered officer's ability to be promoted." According to the plaintiff, the ramifications of this rescoring process are as follows:

> Assume, for example, that an SSB scores 11 records—5 select benchmarks, 5 non-select benchmarks, and Major Haselrig. Assume further that Major Haselrig's record ties a non-select benchmark with the highest of all the scores. Even when tied with the highest score, Major Haselrig will *not* be promoted by the SSB because that score did not *exceed* all of the non-select benchmarks' scores. In that case, Major Haselrig, an officer whose record was superior to all five officers who were promoted by the original board, is denied pro-

motion to the same grade in which they are already serving.

(Emphasis in original.)

In an SSB, an officer will be selected for promotion, "if his or her record scores higher than all the nonselect records and ties at least one of the selected records from the original board." AFI 36–2501, ¶ 6.5.4. The differences among the benchmark records can be slight as the benchmark records are chosen because they rank among the highest scoring records which did not get promoted and the lowest scoring records which did get promoted. AFI 36–2501, ¶ 3.3.3. Because these benchmark records were scored by the original promotion board close to one another, changed reevaluations in scores by the SSB could affect their relative standing. Plaintiff contends, because records are rescored, it is possible that a record which was nonselected by the original board could rank higher than some or all of the records that were selected, the SSB procedures violate the intent of the statute and the Air Force regulations.[21] The plaintiff also points out that:

> The Air Force does not un-promote a select benchmark that an SSB scores below non-select benchmarks. Nor does it promote non-select benchmarks that outscore select benchmarks. That is plainly because the SSB scores do not equate to the regular board's scores. Trying to mix the two, as in AFI 36–2501, ¶ 6.5.4, creates an unrealistic and unreasonably excessive standard that does not resolve the question that Section 628 was designed to answer.

In sum, plaintiff argues that the SSB procedure is flawed because the SSBs score the records, but then refer back to the record's select and nonselect status as given by the original board to determine whether the officer should be promoted. The SSBs recommend promotion based on the order of merit

---

**20.** When rescoring the records, the members of the SSB do not know which of the records are the selected benchmarks, nonselected benchmarks, or which one is the record being reconsidered.

**21.** There is nothing in the record which would reveal whether or not in Mr. Haselrig's case, a benchmark record, which was not selected for promotion by the original board, subsequently

scored higher than one which was selected when the records were rescored by the SSBs. All of the score data from the SSBs in question were destroyed routinely pursuant to Air Force regulations. Therefore, plaintiff's argument presents the court with a hypothetical fact situation because there is no evidence that the alleged flaw actually affected Mr. Haselrig's promotion chances.

as determined by the original selection board, even though the SSB scores could place the benchmark records in a completely different order of merit. According to the plaintiff, if a benchmark record that was nonselected by the original board is chosen as the top record at the SSB, there would be no possibility for the officer whose record is under reconsideration to be promoted because of the AFI 36–2501, paragraph 6.5.4, mandate that the officer's records being reconsidered score higher than "all the nonselect records and ties at least one of the selected records from the original board." By scoring a nonselect record higher than one from a service member who was selected for promotion by the original board, the plaintiff argues that the SSBs are raising the bar which the applicant must surpass, and are acting "[c]ontrary to the hierarchical evaluation at a central board ...." Therefore, according to the plaintiff, SSBs are not providing a "reasonable determination" of an officer's promotion prospects under the original selection board, or "replicat[ing] central selection boards...to the maximum extent possible." *Porter v. United States*, 163 F.3d at 1324; 10 U.S.C. § 628; AFI 36–2501, ¶ 6.1.

Plaintiff suggests that a simpler and better manner in which the SSBs could operate would be if, after rescoring the records, SSBs did not refer back to the original board's select or nonselect status. Instead, plaintiff argues, after scoring the applicant's records and the ten benchmark records, the SSB should promote the applicant under review with the corrected records if his or her records scored among the top five. The plaintiff contends that such a system would remove the possibility that the applicant would not be selected by the SSB because a benchmark record, that was not selected for promotion by the original board, nevertheless scored higher at the SSB than some or all of the benchmark records that were selected by the original board.

It is not, however, the role of this court to instruct an executive agency on how to better implement congressional direction. This court only should review whether or not the Air Force's procedure as implemented was a permissible interpretation of both statutory and regulatory mandates and whether the decisions of the AFBCMR were arbitrary, capricious, or not in accordance with the law. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. at 842–43, 104 S.Ct. 2778; *Porter v. United States*, 163 F.3d at 1312.

Defendant acknowledges that: "While his [plaintiff's] record may need to place higher on the order of merit when a nonselected benchmark record is scored higher than a selected benchmark record, the standard is the same.... [T]his standard ensures that no officer is promoted when his record's score does not exceed that of an officer who was not promoted." Defendant also argues that the hypothetical does not demonstrate the use of a supercompetitive standard by the SSBs and that the SSB procedures are consistent with the purpose of the statute.

In *Small v. United States*, the plaintiff made the argument that the procedures followed by a military promotion board violated the intent of a statute. *Small v. United States*, 158 F.3d at 578–79. In *Small*, plaintiff argued that the use of panels to make decisions for the entire selection board violated the relevant statutory provisions, 10 U.S.C. §§ 616 and 617, which require that (1) the board make findings and recommendations regarding the candidates for promotion and (2) each member of the board certify that the officers recommended for promotion are the best qualified in the opinion of the majority of the board members. *Small v. United States*, 158 F.3d at 578–79. The United States Court of Appeals for the Federal Circuit affirmed the judgment for the defendant by the United States Court of Federal Claims, which held that nothing in the statute required every single member of the promotion board to have personal knowledge of the candidate's records in order to have the required majority determination needed for promotion. *Id.* at 581. The court wrote: "The statute does not require that a majority determination be based on a knowing review and conscientious consideration of each officer's record." *Id.* Therefore, the court held that the panel system complied with statutory requirements. *Id.* In *Small*,

the Federal Circuit found that there was "nothing in the legislative history [of 10 U.S.C. § 616(c) and 10 U.S.C. 617(a)] that would reveal Congress' intent with regard to these issues [whether a selection board could operate through panels]." *Id.*

As in the *Small* case, in the case currently before the court there also is no specific guidance in the statute, 10 U.S.C. § 628, to show that SSB practices established by the Air Force are impermissible. The words "reasonable determination" in the legislative history, as embraced by the United States Court of Appeals for the Federal Circuit in *Porter v. United States,* give very little guidance as to what Congress intended. *Porter v. United States,* 163 F.3d at 1324. The plaintiff cannot point to a demonstration of legislative intent that the SSBs should not be allowed to assess the SSB scores against benchmark rankings (lowest selects, highest nonselects) from the original board. In fact, logically, the procedures are consistent with the mandate of 10 U.S.C. § 628 to compare the candidate's records with "the records of a sampling of those officers of the same competitive category who were recommended for promotion and those officers who were not recommended for promotion." 10 U.S.C. § 628(b)(2).

The procedures adopted by the Air Force SSBs represent an appropriate and permissible attempt by the defendant to reestablish the cut line from the original board, by using benchmark records that scored directly above and below it. The court is not persuaded by plaintiff's argument that the procedures do not, as directed by AFI 36–2501, paragraph 6.1, "replicate ... to the maximum extent possible" the cut line from the original board as determined in accordance with AFI 36–2501, paragraph 2.19. In AFI 36–2501, paragraph 2.19, a cut line is established by the original promotion board after the records are placed in merit order ranking and the panel applies the quota given to the board by the Secretary of the military department. Unlike the original promotion board, the SSBs do not and should not have a quota or limit as to the number of applicants it may promote. In fact, the SSBs give the applicants the benefit of possible extra promotion slots which were not included in the original promotion quota given to the original selection board.

This court finds that the procedures established by the Air Force allow the SSBs to make a "reasonable determination as to whether the officers would have been selected if his pertinent records had been properly considered by the board unfettered by material error." *Porter v. United States,* 163 F.3d at 1324. The court finds that Air Force regulations (AFI 36–2501) establish procedures which are consistent with the statute, 10 U.S.C. § 628. The SSBs which reviewed plaintiff's records also did meet the requirements of AFI 36–2501, paragraph 6.1 to "replicate... to the maximum extent possible," the original board, given, among other realities that different individuals may review the same service records somewhat differently. If an applicant's record does not score higher than all of those that were not selected because they were below the cut line, it is reasonable to conclude that the applicant, as well, would not have scored above the cut line in the original board and would not have been promoted by that original board. Based on the record before the court, this court finds that the actions of the AFBCMR were not arbitrary, capricious, unsupported by the evidence, or contrary to the law.

### CONCLUSION

Defendant's Motion to Dismiss the plaintiff's claims as nonjusticiable is **DENIED.** Defendant's Motion for Judgment on the Administrative Record is, hereby, **GRANTED.** The court finds that the SSB procedures employed by the Air Force were a permissible interpretation of 10 U.S.C. § 628 and were consistent with Air Force regulations.[22] Plaintiff has failed to persuade the court that the Air Force acted improperly. Therefore, the decision of the AFBCMR to deny the plaintiff's request for reconsideration was not

---

**22.** At oral argument, held in this case on June 28, 2002, defendant advised the court that regardless of the outcome of the case, plaintiff would be considered under procedures currently being drafted to implement new congressional authority to establish "special boards" pursuant to 10 U.S.C.A. § 1558 (West Supp.2002).

arbitrary, capricious, unsupported by the evidence, or contrary to law. Each party shall bear its own costs.

**IT IS SO ORDERED.**